JAMES S. BURLING, Alaska Bar No. 8411102
E-mail: jsb@pacificlegal.org
OLIVER J. DUNFORD*, Ohio Bar No. 0073933
E-mail: ojd@pacificlegal.org
JEFFREY W. McCOY*, Colo. Bar No. 43562
E-mail: jwm@pacificlegal.org
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

JONATHAN WOOD*, Cal. Bar No. 285229
E-mail: jw@pacificlegal.org
TODD F. GAZIANO*, Tex. Bar No. 07742200
E-mail: tfg@pacificlegal.org
Pacific Legal Foundation
3033 Wilson Blvd., Suite 700
Arlington, Virginia 22201
Telephone: (202) 888-6881

ZACHARIA OLSON*, D.C. Bar No. 1025677
E-mail: zolson@dc.bhb.com
Birch, Horton, Bittner & Cherot, P.C.
1156 15th Street, NW, Suite 1020
Washington, D.C. 20005
Telephone: (202) 659-5800

*Pro Hac Vice Pending

Attorneys for Applicant Defendant-Intervenors

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | ) | No. 3:17-cv-00091-JWS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |

Def.-Intervenors' P. & A. to Motion to Intervene
*CBD v. Zinke*, No. 3:17-cv-00091-JWS
Case 3:17-cv-00091-SLG    Document 20    Filed 05/04/17    Page 1 of 22

| | | |
|---|---|---|
| RYAN ZINKE, et al., | ) | **MEMORANDUM IN** |
| | ) | **SUPPORT OF** |
| | ) | **DEFENDANT-** |
| Defendants. | ) | **INTERVENORS' MOTION** |
| | ) | **TO INTERVENE** |
| PACIFIC LEGAL FOUNDATION; | ) | **(FRCP 24)** |
| ALASKA OUTDOOR COUNCIL; BIG | ) | |
| GAME FOREVER; KURT WHITEHEAD; | ) | |
| and JOE LETARTE, | ) | |
| | ) | |
| Applicant Defendant-Intervenors. | ) | |
| _____ | ) | |

# Table of Contents

Introduction ................................................................................................................. 1

Applicants ................................................................................................................... 3

Background .................................................................................................................. 6

Argument ..................................................................................................................... 8

   I.   Applicants Satisfy Rule 24(a) and Should
       Be Granted Intervention as of Right ................................................. 8

      A.   Applicants' Motion to Intervene Is Timely ................................... 9

      B.   Applicants Have Significantly Protectable Interests in This Action ........... 9

      C.   Disposition of This Case May Impair or Impede Applicants' Interests ...... 11

      D.   None of the Parties Adequately Represent Applicants' Interests .............. 12

  II.   In the Alternative, Applicants Satisfy the Standard
       for Permissive Intervention .............................................................. 15

Conclusion ................................................................................................................. 16

# Table of Authorities

## Cases

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) ................................................. 13

*California ex rel. Lockyer v. United States*,
450 F.3d 436 (9th Cir. 2006) ........................................................................ 8-9, 11

*Californians for Safe & Competitive Dump Truck Transp. v.*
*Mendonca*, 152 F.3d 1184 (9th Cir. 1998) ............................................................ 15

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) ..................................................................... 9, 12-13

*Cnty. of Fresno v. Andrus*, 622 F.2d 436 (9th Cir. 1980) .......................................... 9

*Employee Staffing Servs. v. Aubry*, 20 F.3d 1038 (9th Cir. 1994) ............................ 15

*Fair Hous. of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002) .................................... 12

*Forest Conservation Council v. United States Forest Serv.*,
66 F.3d 1489 (9th Cir. 1995) ...................................................................... 10-13

*Greene v. United States*, 996 F.2d 973 (9th Cir. 1993) .............................................. 9

*Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392 (9th Cir. 1995) ......................... 10

*INS v. Chadha*, 462 U.S. 919 (1983) ........................................................................ 7

*Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094 (9th Cir. 2002) ........................ 15

*La Asociacion de Trabajadores de Lake Forest v.*
*City of Lake Forest*, 624 F.3d 1083 (9th Cir. 2010) ............................................... 12

*Nuesse v. Camp*, 385 F.2d 694 (D.C. Cir. 1967) ...................................................... 9

*Orange Cnty. v. Air California*, 799 F.2d 535 (9th Cir. 1986) ................................... 15

*S.W. Center for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001) .............. 12

*Scotts Valley Band of Pomo Indians of the Sugar Bowl Rancheria v.*
*United States*, 921 F.2d 924 (9th Cir. 1990) ......................................................... 10

*SEC v. United States Realty & Improvement Co.*, 310 U.S. 434 (1940) .................... 15

*Sierra Club v. EPA*, 995 F.2d 1478 (9th Cir. 1993) .............................................. 9-10

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972).................................. 12

*United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004) ............................ 9

*United States v. Carpenter*, 526 F.3d 1237 (9th Cir. 2008) ........................................ 10

*United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002) ........................... 8

*Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246 (10th Cir. 2001) .......................... 13

*Wilderness Soc'y v. U.S. Forest Service*, 630 F.3d 1173 (9th Cir. 2011) ................ 8-10

**Statutes**

5 U.S.C. § 801(a)(1)(A) ................................................................................................ 7

5 U.S.C. § 801(a)(1)(B) ................................................................................................ 7

5 U.S.C. § 801(f) ...................................................................................................... 1, 7

5 U.S.C. § 802 ............................................................................................................... 7

5 U.S.C. § 804(3) .......................................................................................................... 7

16 U.S.C. §§ 410hh-3233 ............................................................................................. 1

16 U.S.C. §§ 668dd-668ee ........................................................................................... 1

43 U.S.C. §§ 1602-1784) .............................................................................................. 1

Pub. L. No. 104–121, Title II, Subtitle E,
    *codified at* 5 U.S.C. §§ 801-808 (2012) .................................................................. 6

Pub. L. No. 115–20, 131 Stat. 86 ................................................................................. 1

**Rules**

Fed. R. Civ. P. 24 ......................................................................................................... 1

Fed. R. Civ. P. 24(a) ................................................................................................ 3, 8-9

Fed. R. Civ. P. 24(a)(2) ........................................................................................... 9-10

Fed. R. Civ. P. 24(b) ............................................................................................... 3, 15

Def.-Intervenors' P. & A. to Motion to Intervene
*CBD v. Zinke*, No. 3:17-cv-00091-JWS

## Other Authorities

81 Fed. Reg. 52,248 (Aug. 5, 2016) ........................................................... 1, 7

Editorial, *Draining the Regulatory Swamp*, Wall St. J., Feb. 27, 2017,
    https://www.wsj.com/articles/draining-the-regulatory-swamp-1488328398 ........... 4

Editorial, *Trump's Deregulation Project*, Wall St. J., Apr. 17, 2017,
    https://www.wsj.com/articles/trumps-deregulation-project-1492470927 ................. 4

https://blog.pacificlegal.org/tag/congressional-review-act/ ........................................ 14

https://rpc.senate.gov/cra-tracking .................................................................. 14

https://www.redtaperollback.com/reports ......................................................... 14

RedTapeRollback.com ................................................................................ 4, 14

Strassel, Kimberly A., *A GOP Regulatory Game Changer*,
    Wall St. J., Jan. 26, 2017,
    https://www.wsj.com/articles/a-gop-regulatory-game-changer-1485478085 ........... 4

Pursuant to Federal Rule of Civil Procedure 24, Pacific Legal Foundation, Alaska Outdoor Council, Big Game Forever, Kurt Whitehead, and Joe Letarte, (collectively, "Applicants") move to intervene to protect their interests at stake in this litigation.

Plaintiff Center for Biological Diversity challenges Congress' and the President's enactment of a law disapproving the Department of Interior's "Refuges Rule" and seeks the reinstatement of that rule. Compl. ¶ 1.[1] But as Plaintiff alleges, both Houses of Congress passed a joint resolution disapproving the rule, which was presented to and signed by the President. Pub. L. No. 115–20, 131 Stat. 86 (Public Law No. 115–20). *See* Compl. ¶¶ 38-39. According to this law, the Refuges Rule has "no force or effect." 5 U.S.C. § 801(f); *see also* Compl. ¶ 39.

Plaintiff challenges Public Law No. 115–20 on the grounds that the Congressional Review Act violates the separation of powers, by allowing Congress to limit an agency's authority without formally amending the statutes[2] under which that authority was previously exercised. Compl. ¶¶ 2-4, 24-27, 38-40. Plaintiff further alleges that the enactment of Public Law No. 115–20 violated the Congressional Review Act. *Id*. ¶¶ 57, 59.

Applicants seek to intervene to defend their interests that are protected by Public Law No. 115–20, and more generally, to defend the constitutionality of the Congressional Review Act.[3]

---

[1] The Refuges Rule is formally titled, "Non-Subsistence Take of Wildlife, and Public Participation and Closure Procedures, on National Wildlife Refuges in Alaska." 81 Fed. Reg. 52,248 (Aug. 5, 2016).

[2] Plaintiff points to the Alaska National Interest Lands Conservation Act (16 U.S.C. §§ 410hh-3233, 43 U.S.C. §§ 1602-1784), and the National Wildlife Administration Act, as amended by the National Wildlife Refuge System Improvement Act of 1997 (16 U.S.C. §§ 668dd-668ee), which allegedly delegate rulemaking authority to Interior. *See* Compl. ¶¶ 18-20.

[3] Applicants are filing, contemporaneously with their Motion to Intervene, a [Proposed] Motion to Dismiss, which thoroughly demonstrates that the Refuges Rule was constitutionally withdrawn under the Congressional Review Act. In the

1

Applicants each have interests in the Congressional Review Act and Public Law No. 115–20 that would be affected by this lawsuit. Pacific Legal Foundation (PLF) has devoted a substantial amount of its resources to a project to educate the public about the Congressional Review Act and promote Congress' ability to use it to supervise federal agencies.

Alaska Outdoor Council represents 47 member clubs and more than 10,000 members, including outdoorsmen, fishers, hikers, hunters, and photographers. Alaska Outdoor Council, its member clubs, and its members not only use the National Wildlife Refuges in Alaska, but they also engage in conservation efforts related to its wildlife. Alaska Outdoor Council participated in the administrative process while the draft of what became the Refuges Rule was considered and ultimately adopted by the Department of the Interior.

Big Game Forever, a non-profit corporation based in Utah, was created to counter threats to wildlife and sportsmen's rights. Its mission is to unite sportsmen to address the most serious threats to wildlife, hunter's rights, and America's outdoor heritage. Big Game Forever and its members engage in direct wildlife-conservation and predator-control efforts on hunting lands, and Big Game Forever itself protects and promotes these efforts through lobbying and strategic litigation.

Kurt Whitehead and Joe Letarte are both hunters and Alaska Master Guides who have used and plan to use lands in the Alaskan National Wildlife Refuges. Mr. Whitehead owns and operates Treasure Hunter Lodge in Klawock, Alaska. He regularly guides hunters and fishers through Alaska. Like Mr. Whitehead, Mr. Letarte regularly guides hunters in Alaska. Both derive their income from this work. They both have strong incentives to help maintain Alaska's diverse wildlife population, including in land in the Alaskan National Wildlife Refuges.

CBD's lawsuit could injure these interests. PLF's interests would be injured because it would be compelled to transfer resources away from its current efforts to

---

alternative, they will file Answer in case the Court interprets Federal Rule of Civil Procedure 24 to require Defendant-Intervenors to file a pleading rather than a motion to dismiss.

educate the public and Congress about the Congressional Review Act and to identify regulations that are particularly appropriate for review under the Act. The Refuges Rule profoundly affects the members and member clubs of Alaska Outdoor Council, as well as many members of Big Game Forever—hunters and sportsman whose hunting and conservation efforts, as well as their own liberty, would be threatened by the reinstatement of the Refuges Rule. If reinstated, the Refuges Rule will prohibit certain "predator control" and other conservation activities on National Wildlife Refuges used by these outdoorsmen.

Further, Alaska Outdoor Council and Big Game Forever, like PLF, would have to devote resources to additional lobbying and litigation efforts related to the Refuges Rule, rather than to their current conservation and predator-control interests.

Finally, both Mr. Whitehead and Mr. Letarte would be harmed—personally and professionally. Their personal enjoyment of the outdoors in the Alaskan National Wildlife Refuges would be severely restricted, as would their ability to pursue their professions. Also, if the Refuges Rule were reinstated, Messrs. Whitehead and Letarte would be unable to participate in the management of predators and the conservation of diverse wildlife in the National Wildlife Refuges.

Because this case will profoundly impact the interests of Applicants and their members, they are entitled to intervention as of right. Fed. R. Civ. P. 24(a). Alternatively, Applicants move for permissive intervention. Fed. R. Civ. P. 24(b). Accordingly, the Motion to Intervene should be granted.

## APPLICANTS

**PLF** is a donor-supported, non-profit with a mission to protect individual liberty and promote limited government, which frequently litigates for the public interest in cases involving the constitutional separation of powers, regulatory agency power, and a balanced approach to environmental protection. PLF engages in scholarly research, promotion, and advocacy regarding administrative-law reform and the Congressional Review Act in particular. Declaration of Todd F. Gaziano ¶¶ 13-14. It has launched a special project devoted to educating the public and

3

public officials about the use and benefits of the Congressional Review Act. *Id*. ¶ 16. This "Red Tape Rollback" project advocates for Congress using the Congressional Review Act more effectively to supervise federal agencies and has attracted national attention and distinguished non-profit partner organizations. *Id*. ¶¶ 16-17. In addition to devoting its resources to promote the use of the Congressional Review Act through its website,[4] PLF's experts regularly speak on Congressional Review Act issues at academic conferences and public events, including those organized by leading law schools and the American Bar Association. *Id*. ¶ 18. PLF's participation in this lawsuit is directly related to its mission to restore the original understanding of the Constitutional separation of powers and encourage greater oversight by Congress of the rulemaking process. *Id*. ¶ 19.

**Alaska Outdoor Council** is a non-profit corporation headquartered in Anchorage, Alaska. Declaration of Rod Arno ¶ 3. It has 47 member clubs and over 10,000 members, including fishers, mountaineers, hunters, boaters, hikers, trappers, campers, and photographers. *Id*. ¶ 6. These members regularly use and enjoy the National Wildlife Refuges in Alaska, and their use thereof will be severely restricted if the Refuges Rule were to be reinstated. *Id*. ¶ 10. Alaska Outdoor Council, therefore, seeks to intervene in this Lawsuit, on behalf of its members, as part of its commitment to (a) maintaining Alaska's fish and wildlife resources and their habitats, (b) protecting the hunting and fishing rights of its members and the general public, (c) assuring equal access to and common use of public lands and resources, (d) preserving critical wildlife habitat, (e) supporting professional state management of Alaska's fish, wildlife, and habitats, and (f) continuing education on

---

[4] RedTapeRollback.com. *The Wall Street Journal* columnists and editorial board have favorably discussed PLF's CRA work in three columns or editorials in the past three months. *See* Kimberly A. Strassel, *A GOP Regulatory Game Changer*, WALL ST. J., Jan. 26, 2017, https://www.wsj.com/articles/a-gop-regulatory-game-changer-1485478085; Editorial, *Draining the Regulatory Swamp*, WALL ST. J., Feb. 27, 2017, https://www.wsj.com/articles/draining-the-regulatory-swamp-1488328398; and Editorial, *Trump's Deregulation Project*, WALL ST. J., Apr. 17, 2017, https://www.wsj.com/articles/trumps-deregulation-project-1492470927.

Def.-Intervenors' P. & A. to Motion to Intervene
*CBD v. Zinke*, No. 3:17-cv-00091-JWS
Case 3:17-cv-00091-SLG    Document 20    Filed 05/04/17    Page 10 of 22

renewable resource management. *Id.* ¶ 7. Among other things, Alaska Outdoor Council promotes these interests in legislative, regulatory, administrative, and judicial efforts; and in particular, it participated in the administrative process while the draft of what became the Refuges Rule was considered. *Id.* ¶¶ 5, 7-9. The interests of Alaska Outdoor Council, its member clubs, and its many thousands of members will all be negatively affected if the Refuges Rule is reinstated. *Id.* ¶¶ 10-11.

**Big Game Forever** is a non-profit corporation headquartered in Bountiful, Utah. Its mission is to address the most serious threats to wildlife, hunter's rights, and our outdoor heritage. Declaration of Ryan Benson ¶¶ 5-6. Its members are involved in hunting and conservation efforts throughout the United States, including in Alaska. *Id.* ¶¶ 6, 13. On behalf of its members, Big Game Forever carries out its mission through three principles: Protect what we have, Restore what we have lost, and Ensure abundant wildlife for future generations. *Id.* ¶ 7. By "Protect," Big Game Forever engages in legislative and legal strategies to tackle the most complex and challenging issues threatening abundant wildlife populations and the North American Model of user based conservation through hunting, trapping, and angling. *Id.* ¶ 8. Big Game Forever engages with state and local governments to protect diverse wildlife populations. *Id.* It also participates in strategic litigation to further these interests. *Id.* Big Game Forever seeks to "Restore" healthy populations of wildlife so that various species can thrive in modern environments. *Id.* ¶ 9. Finally, Big Game Forever "Inspires" its members by assisting their related efforts in wildlife conservation. *Id.* ¶ 10. Big Game Forever and its members are active across the country, including in Alaska, and they will be harmed if the Refuges Rule is reinstated and their use of the National Wildlife Refuge in Alaska is restricted. *Id.* ¶¶ 11, 13.

**Kurt Whitehead** is a licensed Alaska Master Guide/Outfitter (#211) and an Alaskan Fishing Guide. Declaration of Kurt Whitehead ¶ 3. Mr. Whitehead and his wife own and operate Treasure Hunter Lodge, LLC in Klawock, Alaska, where they offer fully-guided, lodge, or boat-based fishing and hunting trips. *Id.* ¶ 5. As a full-

Def.-Intervenors' P. & A. to Motion to Intervene
*CBD v. Zinke*, No. 3:17-cv-00091-JWS
Case 3:17-cv-00091-SLG   Document 20   Filed 05/04/17   Page 11 of 22

time guide, Mr. Whitehead has guided big-game hunters in Alaska every spring and fall since 1996, including in the Yukon Delta National Wildlife Refuge, part of the Alaskan National Wildlife Refuge, and he plans to continue doing so in the future. *Id.* ¶¶ 6-7. As a licensed Alaska Master Guide/Outfitter, and based on his experience in hunting in Alaska, Mr. Whitehead has observed that wolves and bears are voracious predators, and if left unmanaged, they will eliminate the ungulate populations in Alaska. *Id.* ¶ 9. As a professional hunter-guide, he has a direct interest in controlling the predator population in Alaska and in conserving the diverse wildlife populations and their habitats. *Id.* ¶ 10.

**Joe Letarte** lives and works out of Two Rivers, Alaska. Declaration of Joe Letarte ¶ 3. He is a licensed Alaska Master Guide (#121), and through this profession, he derives his income. *Id.* ¶ 4. Mr. Letarte has acted as a guide, and personally hunted, throughout Alaska, including in the Yukon Flats, which is part of the National Wildlife Refuges in Alaska. *Id.* ¶ 5. And he plans to continue acting as a professional guide, and to hunt in his personal time, including in the National Wildlife Refuges in Alaska. *Id.* ¶ 6. As a licensed Alaska Master Guide, and based on his experience in hunting in Alaska, Mr. Letarte has observed that the Yukon Flats is overrun with bears and wolves, and that they have severely harmed the moose population there. *Id.* ¶ 7. He believes that if the bears and wolves are left unmanaged, they will eliminate the moose and other wildlife populations in the Yukon Flats. *Id.* As a professional hunter-guide, he has a direct interest in controlling the predator population in Alaska and in conserving the diverse wildlife populations and their habitats. *Id.* ¶ 8.

### BACKGROUND

In 1996, Congress passed and President Clinton signed the Congressional Review Act (CRA), enabling Congress and the President together to quickly enact laws disapproving administrative rules. Pub. L. No. 104–121, Title II, Subtitle E, *codified at* 5 U.S.C. §§ 801-808 (2012).

The Congressional Review Act requires federal agencies to submit to each House of Congress a copy of every covered rule,[5] a concise general statement relating to the rule, and the proposed effective date. 5 U.S.C. § 801(a)(1)(A). The agency must also submit to the Comptroller General (and make available to each House of Congress) a copy of any cost-benefit analysis and other relevant information. *Id*. § 801(a)(1)(B). Once a rule is submitted, both houses of Congress have 60 legislative days to use fast-track procedures (suspending the filibuster and limiting debate) to pass a bill disapproving the rule. *Id*. § 802. If a majority of both houses of Congress pass the bill, it is presented to the President for his signature.

In short, the CRA allows Congress and the President, consistent with bicameralism and presentment requirements of the Constitution, to enact laws invalidating administrative rules and regulations. *See INS v. Chadha*, 462 U.S. 919, 946-51 (1983) (explaining that a bill becomes a law when passed by both Houses of Congress and presented to and signed by the President).

In August 2016, the Department of the Interior adopted the Refuges Rule, which places restrictions on hunting and trapping on National Wildlife Refuges in Alaska. 81 Fed. Reg. 52,248 (Aug. 5, 2016). *See* Compl. ¶¶ 32-37.

On February 7, 2017, the House introduced a bill to disapprove the rule. Compl. ¶ 38. That bill was passed by the House on February 16, 2017 and by the Senate on March 21, 2017. *Id*. ¶ 39. President Trump signed the bill into law on April 3, 2017. *Id*.; Pub. L. No. 115–20. The resulting law, Public Law No. 115–20, expressly states that the Refuges Rule has "no force or effect." 5 U.S.C. § 801(f); *see also* Compl. ¶ 39**.**

Plaintiff alleges that it was unconstitutional for Congress and the President to enact a law invalidating an agency rule without formally amending the statutes under which the rule was adopted. Plaintiff further alleges that the congressional

---

[5] The CRA adopted, with certain exceptions, the definition of the word "rule" from the Administrative Procedure Act. 5 U.S.C. § 804(3).

Def.-Intervenors' P. & A. to Motion to Intervene
*CBD v. Zinke*, No. 3:17-cv-00091-JWS
Case 3:17-cv-00091-SLG    Document 20    Filed 05/04/17    Page 13 of 22

proceedings that led to the enactment of Public Law No. 115–20 violated the Congressional Review Act.

**ARGUMENT**

**I**

**APPLICANTS SATISFY RULE 24(a) AND
SHOULD BE GRANTED INTERVENTION AS OF RIGHT**

A party has a right to intervene if it (a) applies in a timely manner, (b) claims an interest relating to the subject of the case, which will be impaired or impeded by its disposition, and (c) its interests aren't adequately represented by the existing parties. Fed. R. Civ. P. 24(a). In applying this standard, courts "normally follow 'practical and equitable considerations' and construe the Rule 'broadly in favor of proposed intervenors.'" *Wilderness Soc'y v. U.S. Forest Service*, 630 F.3d 1173, 1179 (9th Cir. 2011) (*en banc*) (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)). This is because "'[a] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the Courts.'" *Id.* (quoting *City of Los Angeles*, 288 F.3d at 397-98). Accordingly, a "prospective intervenor 'has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation.'" *Id.* (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)).

When analyzing a motion to intervene as of right under Rule 24(a)(2), Ninth Circuit courts apply a four-part test to determine whether to grant an applicant's motion:

(1)     The application for intervention must be timely;

(2)     The applicant must have a "significantly protectable" interest relating to the property or transaction that is the subject of the action;

(3)     The applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and

8

(4)     The applicant's interest must be inadequately represented by the existing parties in the lawsuit.

*Wilderness Soc'y*, 630 F.3d at 1177; Fed. R. Civ. P. 24(a).

## A.    APPLICANTS' MOTION TO INTERVENE IS TIMELY

Three factors inform whether a motion to intervene is timely: (1) the stage of the proceedings; (2) prejudice to existing parties; and (3) the reason for delay in moving to intervene. *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004).

Applicants move to intervene at the earliest stage of this litigation, and thus, delay is not an issue. Plaintiff filed its Complaint on April 20, 2017, ECF No. 1; no answers or responsive motions have been filed; and the Court has not issued a scheduling order. *See Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (noting that a motion to intervene was timely when it was filed within three months of the filing of the Complaint and two weeks of the filing of an answer).

Given the early stage of this litigation, intervention will not prejudice any of the parties, and this Motion to Intervene will not result in significant disruption or delay. Consequently, Applicants' motion is timely.

## B.    APPLICANTS HAVE SIGNIFICANTLY PROTECTABLE INTERESTS IN THIS ACTION

To intervene as of right, a party must have an "interest relating to the property or transaction that is the subject of the action . . . ." Fed. R. Civ. P. 24(a)(2). This interest test is not a bright-line rule, but is instead met if applicants will "suffer a practical impairment of [their] interests as a result of the pending litigation." *California ex rel. Lockyer*, 450 F.3d at 441. Accordingly, a court should make a "practical, threshold inquiry," *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993), and "'involv[e] as many apparently concerned persons as is compatible with efficiency and due process.'" *Cnty. of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). The types of interests protected are interpreted "'broadly, in favor of the

applicants for intervention.'" *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993) (quoting *Scotts Valley Band of Pomo Indians of the Sugar Bowl Rancheria v. United States*, 921 F.2d 924, 926 (9th Cir. 1990)).

Here, Applicant PLF's interest in this lawsuit arises from its mission to reform federal administrative law to conform to the Constitutional separation of powers, and in particular, the proper use of the Congressional Review Act to restore a limited and constitutional legislative review of agency regulatory behavior. *See Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (holding that a "public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported"). This lawsuit will directly affect PLF's mission to restore the original understanding of the Constitutional separation of powers and encourage greater oversight by Congress of the rulemaking process.

Alaska Outdoor Council and Big Game Forever, and particularly their members, also have considerable property and liberty interests at stake because Plaintiff's requested relief—the reinstatement of the Refuges Rule—would restrict Applicants' members' use of federal land. Similarly, Mr. Whitehead and Mr. Letarte each have personal and professional property and liberty interests at stake in this case. Reinstatement of the Refuges Rule would severely restrict their personal and professional use of the Alaskan National Wildlife Refuges. *See Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1494 (9th Cir. 1995) ("[W]hen, as here, the injunctive relief sought by plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests, that party satisfies the 'interest' test of Fed. R. Civ. P. 24(a)(2); [it] has a significantly protectable interest that relates to the property or transaction that is the subject of the action."), *abrogated on other grounds*, *Wilderness Soc'y v. United States Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011). *See also United States v. Carpenter*, 526 F.3d 1237, 1240 (9th Cir. 2008) (holding that groups had protectable interest in using and preserving public lands).

Finally, all Applicants and their members will unquestionably be bound by the Court's ruling in this case. *See Forest Conservation Council*, 66 F.3d at 1496 (Because plaintiffs "sought to enjoin all activities authorized by the Forest Service within Northern Goshawk habitat, the [applicants] could be legally bound by the court's decree.").

Messrs. Whitehead and Letarte, as well as Alaska Outdoor Council and Big Game Forever and their members engage in conservation efforts, as well as hunting, in Alaskan National Wildlife Refuges. Whitehead Decl. ¶¶ 3-8, 10, 12; Letarte Decl. ¶¶ 3-6, 8, 10; Arno Decl. ¶¶ 5-7, 10; Benson Decl. ¶¶ 11, 13. Reinstatement of the Refuges Rule would dramatically restrict Applicants' ability to continue those activities. *Id*. If the Refuges Rule is reinstated, Applicants' members will have little choice but to abandon or substantially restrict their uses of these lands. *Id*. They will also be prevented from practicing and promoting wildlife preservation in the Alaskan National Wildlife Refuges. *Id*. Alaska Outdoor Council and Big Game Forever will also be compelled to divert resources toward legislative, legal, and administrative efforts to protect their members' access to National Wildlife Refuges in Alaska. Arno Decl. ¶ 11; Benson Decl. ¶ 14. These resources would otherwise be used for conservation and other efforts. *Id*. Finally, Messrs. Whitehead and Letarte will also suffer loss of income, as their access to federal lands would be restricted. Whitehead Decl. ¶¶ 3, 5, 10, 12-13; Letarte Decl. ¶¶ 3-4, 8, 10-11.

## C. DISPOSITION OF THIS CASE MAY IMPAIR OR IMPEDE APPLICANTS' INTERESTS

Disposition of this case plainly threatens to impair and impede Applicants' interests. The threshold for demonstrating potential impairment of interests is low, as Rule 24(a)'s requirement addresses whether, as a practical matter, a denial of intervention would impede a prospective intervenor's ability to protect its interests. *California ex rel. Lockyer*, 450 F.3d at 442 ("Having found that appellants have a significant protectable interest, we have little difficulty concluding that the disposition of this case may, as a practical matter, affect it.").

11

Here, denying PLF intervention will impede its ability to continue its Red Tape Rollback project and related efforts at promoting the Congressional Review Act. A ruling that invalidates or narrows the Congressional Review Act will require PLF to transfer resources away from administrative oversight and toward additional legislative reform. *See La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (explaining that an organization can establish an injury "when it suffer[s] 'both a diversion of its resources and a frustration of its mission.'") (quoting *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002)). *See id.* (injury exists when organization "suffer[s] some other injury if it had not diverted resources to counteracting the problem."). These unique interests support PLF's intervening here.

Further, Mr. Whitehead, Mr. Letarte, and the wildlife-conservationist Applicants' members' use of the National Wildlife Refuges will be severely restricted if the Refuges Rule is reinstated. *See S.W. Center for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) ("We follow the guidance of Rule 24 advisory committee notes that state that '[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'") (quoting Fed. R. Civ. P. 24 advisory committee note to 1966 amendment). Therefore, the disposition of this case will undoubtedly have a tangible effect on Applicants and their members.

D.     NONE OF THE PARTIES ADEQUATELY
       REPRESENT APPLICANTS' INTERESTS

The "burden in showing inadequate representation is minimal: it is sufficient to show that representation *may* be inadequate." *Forest Conservation Council*, 66 F.3d at 1498 (citations omitted) (emphasis in the original). *See also Citizens for Balanced Use v. Mountain Wilderness Ass'n*, 647 F.3d at 898 (same); *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) ("[T]he burden of making that showing should be treated as minimal."). The Ninth Circuit has established a three-part test for addressing this factor:

(1)     Whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments;

(2)     Whether the present party is capable and willing to make such arguments;

(3)     Whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

647 F.3d at 898. The "most important factor," however, is "'how the interest compares with the interests of existing parties.'" *Id.* If the "'government is acting on behalf of a constituency that it represents,'" then there is "an assumption of adequacy.'" *Id.* (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)).

Applicants in this case meet the threshold for demonstrating that the government will not adequately represent their interests. Although Applicants are hopeful that the government will strongly defend the effectiveness of Public Law No. 115–20, it may not do so. The government's public interests are not such that it will undoubtedly make all of Applicants' arguments. The federal government has a variety of interests implicated by this case, including protecting species and maximizing its power and discretion. *See Forest Conservation Council*, 66 F.3d at 1499 (noting that the government is more focused on "broad public interests") (collecting cases). *See also Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1255 (10th Cir. 2001) (same). In particular, Public Law No. 115–20 precludes the Department of the Interior from enforcing the Refuges Rule, a rule that the Department itself adopted. Accordingly, there is no guarantee that the Department or the Secretary—the only defendants in this lawsuit—will defend the interests of Applicants.

Further, Applicant PLF has expertise in the Congressional Review Act that the Department of the Interior likely does not have. *See Utah Ass'n of Counties*, 255 F.3d at 1255 (The minimal inadequacy "showing is met when the applicant for intervention has expertise the government may not have."). PLF's Senior Fellow in

13

Constitutional Law Todd Gaziano served as Chief Counsel to the U.S. House of Representatives Subcommittee on National Economic Growth, Natural Resources and Regulatory Affairs, which was then Chaired by Representative David M. McIntosh, a Member of Congress from Indiana's 2nd Congressional District. Gaziano Decl. ¶ 7. Further, Mr. Gaziano was the principal House negotiator and staff drafter of the Congressional Review Act, the final version of which was negotiated between bipartisan House and Senate sponsors. *Id.* ¶ 9. He assisted all House and Senate sponsors from both political parties draft a joint statement on its legislative history and purposes, and these statements were entered into the Congressional Record of each House. *Id.* Mr. Gaziano is very familiar with the CRA's provisions and purposes, and when he was a non-profit scholar, he published writings and gave presentations on the Act's purposes, applications, and uses. *Id.* ¶ 10. Further, he was invited and did testify at a congressional hearing on the Act's 10th Anniversary. *Id.* Finally, Representative McIntosh, other scholars, and the national media, have described Mr. Gaziano as the nation's foremost expert on the Congressional Review Act. *Id.*

Since January of this year, PLF's "Red Tape Rollback" initiative has promoted the CRA and identified administrative rules for review under the CRA.[6] To date, thirteen administrative rules, including the Refuges Rule, have been invalidated through laws passed under the CRA.[7] PLF and its partners in the Red Tape Rollback project have also published numerous scholarly reports and other publications on the CRA.[8]

Further, Mr. Whitehead and Mr. Letarte, as well as the wildlife-conservationist Applicants and their members, are uniquely concerned with the negative consequences from the possibility of restrictions of use on the National

---

[6] *See* https://www.redtaperollback.com/.

[7] *See* https://www.rpc.senate.gov/cra-tracking.

[8] *See* https://www.redtaperollback.com/reports/ and http://blog.pacificlegal.org/tag/congressional-review-act/.

Def.-Intervenors' P. & A. to Motion to Intervene
*CBD v. Zinke*, No. 3:17-cv-00091-JWS

Wildlife Refuges. *See Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1189 (9th Cir. 1998) (intervention appropriate where intervenor's interest is more narrow and parochial than those of the public at large).

For these reasons, the government's representation of Applicants' interests "may" be inadequate, and they are entitled to intervene as of right.

## II

### IN THE ALTERNATIVE, APPLICANTS SATISFY THE STANDARD FOR PERMISSIVE INTERVENTION

If the Court denies Applicants' motion to intervene as of right, the Court should alternatively grant Applicants permission to intervene pursuant to Rule 24(b)(2). Courts have broad discretion to grant intervention under the permissive standard. *See Orange Cnty. v. Air California*, 799 F.2d 535, 539 (9th Cir. 1986). Rule 24(b)(2) "'plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation.'" *Employee Staffing Servs. v. Aubry*, 20 F.3d 1038, 1042 (9th Cir. 1994) (quoting *SEC v. United States Realty & Improvement Co.*, 310 U.S. 434, 459 (1940)). Notably, "[u]nlike rule 24(a), a 'significant protectable interest' is not required by Rule 24(b) for intervention; all that is necessary for permissive intervention is that intervenor's 'claim or defense and the main action have a question of law or fact in common.'" *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002) (citing Fed. R. Civ. P. 24(b)).

In this case, Applicants seek to intervene to defend the constitutionality of the Congressional Review Act and Public Law No. 115–20. This defense has questions of law in common with Plaintiff's claims—if Plaintiff's argument is correct, the Congressional Review Act would be unconstitutional, or at least narrowed, and the Refuges Rule will be reinstated. Given the importance of this issue, Applicants' stakes in it, and the early stage of this litigation, the Court should allow permissive intervention.

The practical effect of a ruling in favor of Plaintiff would severely restrict the rights of Applicants' members from engaging in hunting and conservation efforts in the National Wildlife Refuges—even though Congress, by invalidating the Refuges Rule, has disapproved of these restrictions. Further, Plaintiff's claim will impact PLF's mission of restoring Congress's primary role in lawmaking. Consequently, the Applicants should be permitted to intervene in this case to defend their and their members' interests.

DATED: May 4, 2017.

Respectfully submitted,

JAMES S. BURLING
OLIVER J. DUNFORD
JEFFREY W. McCOY
JONATHAN WOOD
TODD F. GAZIANO
ZACHARIA OLSON

s/ James S. Burling
JAMES S. BURLING

Attorneys for Applicant
Defendant-Intervenors