CHAD A. READLER
Acting Assistant Attorney General
Civil Division

BRYAN SCHRODER
Acting United States Attorney

BRETT A. SHUMATE
Deputy Assistant Attorney General
Civil Division

ERIC R. WOMACK
Assistant Branch Director
Civil Division, Federal Programs Branch

STEPHEN M. PEZZI
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530
Phone (202) 305-8576; Fax (202) 616-8470
Email: stephen.pezzi@usdoj.gov

RICHARD L. POMEROY
Assistant United States Attorney
222 West Seventh Avenue, Room 253
Anchorage, Alaska 99513-7567
Phone (907) 271-5071; Fax (907) 271-2344
Email: richard.pomeroy@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | Case No. 3:17-cv-00091-JWS |
| Plaintiff, | |
| v. | |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FEDERAL DEFENDANTS' RENEWED MOTION TO DISMISS** |
| RYAN ZINKE, in his official capacity as Secretary of the Interior; and U.S. DEPARTMENT OF THE INTERIOR, | |
| Defendants. | |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 2

I.      The Congressional Review Act .................................................................... 2

II.     The Refuges Rule .......................................................................................... 5

III.    Public Law 115-20 ......................................................................................... 6

IV.     Procedural History ......................................................................................... 7

LEGAL STANDARD .................................................................................................... 8

ARGUMENT ................................................................................................................. 8

I.      BOTH THE CONGRESSIONAL REVIEW ACT AND PUBLIC LAW 115-20
        ARE CONSTITUTIONAL. ............................................................................ 9

        A.      The Congressional Review Act, and joint resolutions of disapproval
                enacted pursuant to the Act, satisfy the constitutional requirements of
                bicameralism and presentment. ........................................................... 9

        B.      Congress may enact laws that override prior inconsistent laws or
                regulations. ......................................................................................... 12

        C.      Congress may amend its delegations of authority to administrative
                agencies. .............................................................................................. 14

        D.      Plaintiff's conclusory references to the Take Care Clause do not support
                its constitutional challenge. ............................................................... 15

        E.      Plaintiff's references to the non-delegation doctrine do not support its
                constitutional challenge. ..................................................................... 18

II.     PLAINTIFF'S STATUTORY CLAIM IS NOT JUSTICIABLE. .................. 20

        A.      The Congressional Review Act expressly bars judicial review of
                Plaintiff's claim that Congress misinterpreted the CRA. ................... 21

                i.      Traditional APA review is foreclosed by 5 U.S.C. § 805. ......... 23

                ii.     The *Leedom v. Kyne* exception does not apply. ......................... 24

B.   The Court lacks jurisdiction to review Plaintiff's challenge to the rules of
the Senate or the House of Representatives. ........................................................ 25

III.   PLAINTIFF'S STATUTORY CLAIM FAILS ON THE MERITS. ............................... 27

A.   The CRA's carryover provision (5 U.S.C. § 801(d)) still applies to agency
rules that are subject to the CRA's hunting exception (5 U.S.C. § 808(1)).......... 27

B.   Even if Congress had violated the procedural requirements of the
Congressional Review Act, it is not *ultra vires* for the Department of the
Interior to comply with Congress's command. ..................................................... 33

CONCLUSION ................................................................................................................... 34

## TABLE OF AUTHORITIES

**CASES**

*Amerco v. NLRB,*
    458 F.3d 883 (9th Cir. 2006) ................................................................ 24

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................... 9, 16

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................... 9, 16

*Bennett v. Spear,*
    520 U.S. 154 (1997) ................................................................... 16, 19

*Block v. Cmty. Nutrition Inst.,*
    467 U.S. 340 (1984) ................................................................... 22, 23

*CFTC v. Schor,*
    478 U.S. 833 (1986) ......................................................................... 15

*FDA v. Brown & Williamson Tobacco Corp.,*
    529 U.S. 120 (2000) ........................................................................ 15

*Franklin v. Massachusetts,*
    505 U.S. 788 (1992) ........................................................................ 17

*Gunn v. Minton,*
    133 S. Ct. 1059 (2013) ..................................................................... 22

*Hellon & Assocs., Inc. v. Phoenix Resort Corp.,*
    958 F.2d 295 (9th Cir. 1992) ............................................................. 13

*In re NSA Telecomms. Records Litig.,*
    671 F.3d 881 (9th Cir. 2011) ............................................................. 20

*INS v. Chadha,*
    462 U.S. 919 (1983) ................................................................ *passim*

*Intri-Plex Techs., Inc. v. Crest Grp., Inc.,*
    499 F.3d 1048 (9th Cir. 2007) .............................................................. 7

*Leedom v. Kyne,*
    358 U.S. 184 (1958) ................................................................... 24, 25

*Metzenbaum v. FERC,*
    675 F.2d 1282 (D.C. Cir. 1982) .......................................................... 27

*Mississippi v. Johnson*,
    71 U.S. (4 Wall.) 475 (1866) ........................................................................ 17

*Mistretta v. United States*,
    488 U.S. 361 (1989) ..................................................................................... 20

*Montanans For Multiple Use v. Barbouletos*,
    568 F.3d 225 (D.C. Cir. 2009) ............................................................... 23, 25

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
    538 U.S. 803 (2003)................................................................................ 16, 19

*NLRB v. Noel Canning*,
    134 S. Ct. 2550 (2014).................................................................................. 26

*Nyunt v. Chairman, Broad. Bd. of Governors*,
    589 F.3d 445 (D.C. Cir. 2009) ............................................................... 24, 25

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
    132 S. Ct. 2065 (2012).................................................................................. 14

*Rangel v. Boehner*,
    20 F. Supp. 3d 148 (D.D.C. 2013), *aff'd*, 785 F.3d 19 (D.C. Cir. 2015)................................ 26

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ........................................................................ 8

*Sheldon v. Sill*,
    49 U.S. 441 (1850)........................................................................................ 22

*Staacke v. U.S. Sec'y of Labor*,
    841 F.2d 278 (9th Cir. 1988) ........................................................................ 25

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998)......................................................................................... 8

*Thomas v. Anchorage Equal Rights Comm'n*,
    220 F.3d 1134 (9th Cir. 2000) ...................................................................... 19

*Tucson Airport Auth. v. Gen. Dynamics Corp.*,
    136 F.3d 641 (9th Cir. 1998) ........................................................................ 22

*United States v. Ballin*,
    144 U.S. 1 (1892)............................................................................. 26, 27, 28

*United States v. S. Indiana Gas & Elec. Co.*,
    2002 WL 31427523 (S.D. Ind. Oct. 24, 2002) ............................................. 23

*United States v. Tynen,*
    78 U.S. 88 (1870) ................................................................................................ 14

*Via Christi Reg'l Med. Ctr., Inc. v. Leavitt,*
    509 F.3d 1259 (10th Cir. 2007) ........................................................................... 23

*Whitman v. Am. Trucking Ass'ns,*
    531 U.S. 457 (2001) ............................................................................................. 20

*Yakus v. United States,*
    321 U.S. 414 (1944) ............................................................................................. 20

**STATUTES**

5 U.S.C. § 551 ............................................................................................................. 2

5 U.S.C. § 701 ..................................................................................................... 22, 23

5 U.S.C. § 702 ........................................................................................................... 22

5 U.S.C. § 704 ..................................................................................................... 16, 19

5 U.S.C. § 706 ................................................................................................. 9, 22, 34

5 U.S.C. §§ 801-08 ...................................................................................................... 2

5 U.S.C. § 801 .................................................................................................... *passim*

5 U.S.C. § 802 .................................................................................................... *passim*

5 U.S.C. § 804 ............................................................................................................. 2

5 U.S.C. § 805 ............................................................................................... 22, 23, 25

5 U.S.C. § 806 ........................................................................................................... 14

5 U.S.C. § 808 ...................................................................................................... 5, 30

16 U.S.C. §§ 410hh-3233 ........................................................................................... 5

16 U.S.C. § 668dd ............................................................................................ 5, 6, 14

16 U.S.C. §§ 668dd-ee ............................................................................................... 5

43 U.S.C. §§ 1602-1784 ............................................................................................. 5

Contract with America Advancement Act of 1996,
    Pub. L. No. 104-121, 110 Stat. 847 ...................................................................... 2

National Wildlife Refuges in Alaska,
  Pub. L. No. 115-20, 131 Stat. 86 (Apr. 3, 2017)..........................................................................7

**UNITED STATES CONSTITUTION**

U.S. Const. art. I..........................................................................................................................11

U.S. Const. art. I § 1....................................................................................................................10

U.S. Const. art. I § 5..............................................................................................................4, 26

U.S. Const. art. I § 7.............................................................................................................10, 11

U.S. Const. art. II § 3....................................................................................................................16

U.S. Const. art. IV § 3....................................................................................................................5

**RULES**

Fed. R. Civ. P. 12............................................................................................................................8

Fed. R. Civ. P. 24............................................................................................................................8

**REGULATIONS**

Non-Subsistence Take on Wildlife, and Public Participation and Closure Procedures on
  National Wildlife Refuges in Alaska, 81 Fed. Reg. 52,248 (Aug. 5, 2016) ...........................6, 7

**OTHER AUTHORITIES**

162 Cong. Rec. H6169 (daily ed. Nov. 14, 2016) .......................................................................33

162 Cong. Rec. S6346 (daily ed. Nov. 15, 2016) .......................................................................33

House Executive Communication EC7285 (114th Cong.)(Nov. 14, 2016) ...................................7

Senate Executive Communication EC7236 (114th Cong.)(Nov. 15, 2016) ..................................7

# INTRODUCTION

Congress enacted the Congressional Review Act in 1996 to facilitate its oversight of agency rulemaking. The statute provides a set of internal procedures by which Congress may review and "disapprove" of agency rules. These joint resolutions of disapproval—which are subject to the constitutional requirements of bicameralism and presentment—declare that a specific agency rule shall have no force and effect. In Public Law 115-20, Congress recently exercised this authority to disapprove of a Department of the Interior regulation concerning hunting and trapping in Alaska.

The Center for Biological Diversity ("Plaintiff") challenges that congressional action in this case. Plaintiff argues (1) that the Congressional Review Act, generally, and Public Law 115-20, specifically, are both unconstitutional under the doctrine of separation of powers, and (2) that Congress misinterpreted the Congressional Review Act when it disapproved of the Department of the Interior's regulation.

These claims should be dismissed. First, the Congressional Review Act and joint resolutions of disapproval enacted pursuant to it, like Public Law 115-20, are constitutional. These enactments are consistent with the bicameral legislative process prescribed in Article I of the Constitution and outlined by the Supreme Court of the United States. *See INS v. Chadha*, 462 U.S. 919 (1983). Because joint resolutions of disapproval only take effect after (1) majority votes in the House and the Senate, and (2) the signature of the President of the United States (or a congressional vote to override the President's veto), neither bicameralism nor presentment is lacking. And Plaintiffs' conclusory references to the Take Care Clause and the non-delegation doctrine provide no support for their constitutional challenges.

Second, the Court lacks jurisdiction to consider Plaintiff's statutory claim, which

challenges Congress's interpretation of its own procedures—both because the Congressional Review Act itself explicitly bars judicial review of such a claim, and because the House and the Senate have exclusive constitutional authority to set their own rules. In any event, Congress correctly interpreted its own procedures in enacting Public Law 115-20.

For these reasons, and for those set forth below, Plaintiff's amended complaint should be dismissed with prejudice

## BACKGROUND

### I.     The Congressional Review Act

After passage by majorities in both houses of Congress, President Clinton signed the Congressional Review Act (hereinafter "the CRA" or "the Act"), 5 U.S.C. §§ 801-08, into law in 1996 as part of a package of regulatory reforms collectively known as the Small Business Regulatory Enforcement Fairness Act. *See* Pub. L. No. 104-121, § 245, 110 Stat. 847. With certain exceptions, the CRA provides that "[b]efore a rule can take effect, the Federal agency promulgating such rule shall submit to each House of the Congress and to the Comptroller General a report" that includes "a copy of the rule," "a concise general statement relating to the rule," and "the proposed effective date of the rule." 5 U.S.C. § 801(a)(1)(A); *see also id.* § 804(3) (defining the term "rule," primarily by reference to the definition of "rule" in the Administrative Procedure Act ("APA"), 5 U.S.C. § 551(4)).

Upon receipt of such a report, Congress has a period of time in which it may enact a joint resolution "disapprov[ing] the rule." 5 U.S.C. § 802(a). Typically, Congress has 60 days from the date of the agency's report to enact such a resolution, though that 60-day clock "exclud[es] days either House of Congress is adjourned for more than 3 days during a session of Congress." *Id.* But "[i]f, within 60 days of session in the Senate or 60 legislative days in the House after the

receipt by Congress of a rule, Congress adjourns its session *sine die*, the periods to submit and act on a disapproval resolution 'reset' in their entirety in the next session of Congress."    Maeve P. Carey et al., Cong. Research Serv., R43992, *The Congressional Review Act: Frequently Asked Questions* (Nov. 17, 2016) (hereinafter "CRS Report"), at 15 (internal footnotes omitted); *see also* 5 U.S.C. § 801(d)(1).    In that circumstance, the 60-day period begins to run, in the new session of Congress, from the 15th "session day" in the Senate, or the 15th "legislative day" in the House. 5 U.S.C. § 801(d)(2)(A).    As a practical matter, "[t]his 'carryover' provision . . . ensure[s] that Congress will have the full periods contemplated by the act to disapprove a rule regardless of when it is received," CRS Report at 16, even across multiple sessions of one Congress, or of two different Congresses.

The Act specifies the precise language that is to be used for a joint resolution of disapproval:

> For purposes of this section, the term "joint resolution" means only a joint resolution introduced in the period beginning on the date on which the report referred to in section 801(a)(1)(A) is received by Congress and ending 60 days thereafter (excluding days either House of Congress is adjourned for more than 3 days during a session of Congress), the matter after the resolving clause of which is as follows: "That Congress disapproves the rule submitted by the _____ relating to _____, and such rule shall have no force or effect."    (The blank spaces being appropriately filled in).

5 U.S.C. § 802(a).

The Act also makes certain modifications to the default legislative procedures in the House and the Senate.    For example, if a Senate committee to which a CRA resolution has been referred has not placed the resolution on the Senate calendar for consideration by the full Senate within 20 calendar days, the resolution "shall be placed on the calendar" if a discharge petition is signed by 30 Senators.    *See id.* § 802(c).    In addition, "[i]n the Senate, debate on the joint resolution, and

on all debatable motions and appeals in connection therewith, shall be limited to not more than 10 hours," *id.* § 802(d)(2), which, at least under current Senate rules, has the practical effect of preventing filibusters of Congressional Review Act resolutions and allowing consideration on a 51-vote threshold.   *See* CRS Report at 1; *see also* Rule XXII, *the Standing Rules of the United States Senate*.   These provisions of the Act that relate only to internal congressional procedures were adopted as an exercise of the constitutional authority of each house of Congress to "determine the Rules of its Proceedings," U.S. Const. art. I, § 5, cl. 2, as explicitly stated in the statute itself:

> This section is enacted by Congress . . . as an exercise of the rulemaking power of the Senate and House of Representatives, respectively, and as such it is deemed a part of the rules of each House, respectively, but applicable only with respect to the procedure to be followed in that House in the case of a joint resolution described in subsection (a), and it supersedes other rules only to the extent that it is inconsistent with such rules; and with full recognition of the constitutional right of either House to change the rules (so far as relating to the procedure of that House) at any time, in the same manner, and to the same extent as in the case of any other rule of that House.

5 U.S.C. § 802(g).   Accordingly, these internal procedural provisions (in Section 802) are subject to change, "at any time," *id.*, pursuant to the authority of each house of Congress to set its own rules, *see* U.S. Const. art. I, § 5, cl. 2.

If a joint resolution of disapproval passes both houses of Congress, and is signed into law by the President, two things happen.   First, and most immediately, the agency rule "shall not take effect (or continue)."   5 U.S.C. § 801(b)(1).   Second, the rule "may not be reissued in substantially the same form," nor may a "new rule that is substantially the same as such a rule . . . be issued, unless the reissued or new rule is specifically authorized by a law enacted after the date of the joint resolution disapproving the original rule."   *Id.* § 801(b)(2).

Finally, the CRA contains a specific exception that is relevant to this case, in a provision

titled "Effective date of certain rules." *Id.* § 808. That exception provides that, "[n]otwithstanding section 801," certain rules "shall take effect at such time as the Federal agency promulgating the rule determines," *id.*, rather than taking effect at the time and in the manner specified in 5 U.S.C. § 801. Rules subject to this exception include "any rule that establishes, modifies, opens, closes, or conducts a regulatory program for a commercial, recreational, or subsistence activity related to hunting, fishing, or camping." *Id.* § 808(1).

## II.     The Refuges Rule

The Property Clause of the United States Constitution gives Congress explicit constitutional authority to manage federal lands. *See* U.S. Const. art. IV, § 3, cl. 2 ("The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States."). Pursuant to this constitutional power, Congress has delegated to the Department of the Interior the authority to manage the National Wildlife Refuge System. *See* 16 U.S.C. § 668dd(a). As for the millions of acres of federal land located on National Wildlife Refuges within the State of Alaska, that authority is governed by a series of federal statutes, including the Alaska National Interest Lands Conservation Act ("ANILCA"), 16 U.S.C. §§ 410hh-3233; 43 U.S.C. §§ 1602-1784, and the National Wildlife Administration Act of 1966 ("the Administration Act") as amended by the National Wildlife Refuge System Improvement Act of 1997 ("the Improvement Act"), 16 U.S.C. §§ 668dd-ee.

In the Improvement Act, Congress authorized the Secretary of the Interior to "temporarily suspend, allow, or initiate any activity in a refuge in the [National Wildlife Refuge] System if the Secretary determines it is necessary to protect the health and safety of the public or any fish or wildlife population." *Id.* § 668dd(k). The statute also directs the Secretary of the Interior to "ensure that the biological integrity, diversity, and environmental health of the [National Wildlife

Refuge] System are maintained for the benefit of present and future generations of Americans." *Id.* § 668dd(a)(4)(B). Finally, the Secretary of the Interior is authorized to "[i]ssue regulations to carry out" the Improvement Act. *Id.* § 668dd(b)(5).

In an exercise of that congressionally delegated authority, the Secretary of the Interior, in the summer of 2016, issued a regulation through notice-and-comment rulemaking that prohibited certain so-called "predator control" methods on National Wildlife Refuges in Alaska. *See Non-Subsistence Take of Wildlife, and Public Participation and Closure Procedures, on National Wildlife Refuges in Alaska*," 81 Fed. Reg. 52,248 (Aug. 5, 2016) (hereinafter, "the Refuges Rule"). In particular, the Refuges Rule prohibited certain hunting and trapping methods—which Plaintiffs allege have been allowed in National Wildlife Refuges in Alaska by the Alaska Board of Game, *see* Am. Compl. ¶¶ 31-32, ECF No. 104—including using snares, nets, traps, or bait to take bears; hunting bear cubs (or sows with cubs); hunting bears from aircraft; and hunting wolves or coyotes during their denning seasons, *see id.* ¶ 39; 81 Fed. Reg. at 52,252.

## III. Public Law 115-20

On October 5, 2016, the Department of the Interior submitted its CRA report for the Refuges Rule to the Comptroller General and to the 114th Congress.[1] Pursuant to the CRA's "carryover" provision, House of Representatives Joint Resolution 69 ("H.R.J. Res. 69" or "the joint resolution")—a joint resolution of disapproval of the Refuges Rule—was introduced on February 7, 2017, in the opening weeks of the 115th Congress. *See* Am. Compl. ¶ 40. The joint

---

[1]    *See* Government Accountability Office ("GAO") Federal Rules Summary Listing, http://www.gao.gov/fedrules/186189; Senate Executive Communication EC7236 (114th Cong.) (Nov. 15, 2016) (noting submission to the Senate on October 5, 2016); House Executive Communication EC7285 (114th Cong.) (Nov. 14, 2016) (noting submission to the House on October 5, 2016). ("[A] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute." *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).)

resolution passed the House of Representatives, on a 225-193 vote, on February 16, 2017. *Id.* ¶ 41. The same resolution passed the Senate a few weeks later, by a vote of 52-47. *See id.* It was presented to the President on March 27, 2017, and the President signed it into law as Public Law 115-20 on April 3, 2017. *See id.* The enactment reads in its entirety:

> Providing for congressional disapproval under chapter 8 of title 5, United States Code, of the final rule of the Department of the Interior relating to "Non-Subsistence Take of Wildlife, and Public Participation and Closure Procedures, on National Wildlife Refuges in Alaska".

> *Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That Congress disapproves the rule submitted by the Department of the Interior relating to 'Non-Subsistence Take of Wildlife, and Public Participation and Closure Procedures, on National Wildlife Refuges in Alaska' (81 Fed. Reg. 52247 (August 5, 2016)), and such rule shall have no force or effect.

Pub. L. No. 115-20, 131 Stat. 86 (Apr. 3, 2017). Since April 3, 2017, consistent with this congressional command, the Department of the Interior "has treated the Refuges Rule as though it had never taken effect." Am. Compl. ¶ 42; *see also* 5 U.S.C. § 801(f) ("Any rule that takes effect and later is made of no force or effect by enactment of a joint resolution under section 802 shall be treated as though such rule had never taken effect.").

## IV. Procedural History

Plaintiff filed this action on April 20, 2017. Compl., ECF No. 1. Six individuals and entities have since been granted leave to intervene as defendants under Federal Rule of Civil Procedure 24. *See* ECF No. 83 (order granting motions to intervene by the Pacific Legal Foundation, the Alaska Outdoor Council, Big Game Forever, Kurt Whitehead, Joe Letarte, Safari Club International, the National Rifle Association of America, and the State of Alaska). Defendants moved to dismiss Plaintiff's original complaint on June 26, 2017, ECF No. 62, and

*Center for Biological Diversity v. Zinke – Case No. 3:17-cv-00091-JWS* **Page 7**

resolution passed the House of Representatives, on a 225-193 vote, on February 16, 2017. *Id.* ¶ 41. The same resolution passed the Senate a few weeks later, by a vote of 52-47. *See id.* It was presented to the President on March 27, 2017, and the President signed it into law as Public Law 115-20 on April 3, 2017. *See id.* The enactment reads in its entirety:

> Providing for congressional disapproval under chapter 8 of title 5, United States Code, of the final rule of the Department of the Interior relating to "Non-Subsistence Take of Wildlife, and Public Participation and Closure Procedures, on National Wildlife Refuges in Alaska".

> *Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That Congress disapproves the rule submitted by the Department of the Interior relating to 'Non-Subsistence Take of Wildlife, and Public Participation and Closure Procedures, on National Wildlife Refuges in Alaska' (81 Fed. Reg. 52247 (August 5, 2016)), and such rule shall have no force or effect.

Pub. L. No. 115-20, 131 Stat. 86 (Apr. 3, 2017). Since April 3, 2017, consistent with this congressional command, the Department of the Interior "has treated the Refuges Rule as though it had never taken effect." Am. Compl. ¶ 42; *see also* 5 U.S.C. § 801(f) ("Any rule that takes effect and later is made of no force or effect by enactment of a joint resolution under section 802 shall be treated as though such rule had never taken effect.").

## IV. Procedural History

Plaintiff filed this action on April 20, 2017. Compl., ECF No. 1. Six individuals and entities have since been granted leave to intervene as defendants under Federal Rule of Civil Procedure 24. *See* ECF No. 83 (order granting motions to intervene by the Pacific Legal Foundation, the Alaska Outdoor Council, Big Game Forever, Kurt Whitehead, Joe Letarte, Safari Club International, the National Rifle Association of America, and the State of Alaska). Defendants moved to dismiss Plaintiff's original complaint on June 26, 2017, ECF No. 62, and

*Center for Biological Diversity v. Zinke – Case No. 3:17-cv-00091-JWS* **Page 7**

each of the various intervenor-defendants filed briefs in support of that motion in early August, ECF Nos. 88, 91, 92. On August 31, 2017, the Court granted Plaintiff's unopposed motion for leave to file an amended complaint. ECF No. 103.

## LEGAL STANDARD

Defendants move to dismiss for lack of subject-matter jurisdiction and for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(1), (b)(6). Plaintiffs bear the burden of demonstrating that the Court has subject-matter jurisdiction over their claims. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998). When, as here, a defendant challenges jurisdiction on the face of the complaint, the complaint must be dismissed unless it includes allegations of sufficient facts to establish jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice;" nor do "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Courts, moreover, do not assume the truth of legal conclusions included in the complaint. *Id.*

## ARGUMENT

Plaintiff brings two sets of claims: (1) constitutional claims, arguing that the Congressional Review Act, and joint resolutions passed pursuant to the Act, including Public Law 115-20, violate constitutional separation-of-powers principles, and (2) a statutory claim, arguing that Congress's passage of this particular joint resolution of disapproval was inconsistent with the procedures set

forth in the CRA, and that any reliance on that enactment by the Department of the Interior is therefore *ultra vires* and "in excess of statutory . . . authority" under the APA, 5 U.S.C. § 706(2)(C).[2]  For the reasons set forth below, all of these claims fail on the merits, and the Court lacks jurisdiction to consider the statutory claim.

## I.     BOTH THE CONGRESSIONAL REVIEW ACT AND PUBLIC LAW 115-20 ARE CONSTITUTIONAL.

Plaintiff claims that both the Congressional Review Act and Public Law 115-20 are unconstitutional violations of the doctrine of separation of powers.   Plaintiff offers several (somewhat overlapping) arguments in support, but none has any merit.   The Congressional Review Act satisfies the constitutional requirements of bicameralism and presentment, and none of the additional requirements that Plaintiff seeks to impose on the Article-I legislative process are required by or consistent with the Constitution.   And neither the Take Care Clause nor the "intelligible principle" requirement imposed by the long-dormant non-delegation doctrine is violated by either enactment.   All of Plaintiff's constitutional challenges should be dismissed for failure to state a claim.

### A.     The Congressional Review Act, and joint resolutions of disapproval enacted pursuant to the Act, satisfy the constitutional requirements of bicameralism and presentment.

"Explicit and unambiguous provisions of the Constitution prescribe and define the respective functions of the Congress and of the Executive in the legislative process."   *INS v. Chadha*, 462 U.S. 919, 945 (1983).   Much like in *INS v. Chadha*, the Supreme Court's landmark

---

[2] Although Plaintiff's amended complaint relies in part on the APA, it is Defendants' position that, notwithstanding Local Civil Rule 16.3, neither the parties nor the Court would benefit from the preparation and filing of an administrative record in this case.   Plaintiff's claims present only pure questions of law, which relate to (1) the facial constitutionality of the Congressional Review Act and Public Law 115-20, and (2) an alleged error of legal interpretation by Congress.   This case can and should be decided as a matter of law and on the pleadings alone.

separation-of-powers decision about the strictures of the Article-I legislative process, "[s]ince the precise terms of those familiar provisions are critical to the resolution of this case," Defendants will "set them out verbatim." *Id.* Article I of the United States Constitution provides:

> "All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and a House of Representatives." U.S. Const. art. I, § 1.

> "Every Bill which shall have passed the House of Representatives and the Senate, shall, before it become a Law, be presented to the President of the United States; . . . ." U.S. Const. art. I, § 7, cl. 2.

> "Every Order, Resolution, or Vote to which the Concurrence of the Senate and House of Representatives may be necessary (except on a question of Adjournment) shall be presented to the President of the United States; and before the Same shall take Effect, shall be approved by him, or being disapproved by him, shall be repassed by two thirds of the Senate and House of Representatives, according to the Rules and Limitations prescribed in the Case of a Bill." U.S. Const. art. I, § 7, cl. 3.

*Chadha*, 462 U.S. at 945-46 (emphases omitted) (quoting U.S. Const. art. I). Although these specific requirements—colloquially known as bicameralism and presentment—are few in number, "the prescription for legislative action in Art. I, §§ 1, 7 represents the Framers' decision that the legislative power of the Federal government be exercised in accord with a single, finely wrought and exhaustively considered, procedure." *Chadha*, 462 U.S. at 951.

The Congressional Review Act, and joint resolutions of disapproval enacted pursuant to the Act, are consistent with that "finely wrought" procedure in every respect. First, they satisfy the bicameralism requirement: A joint resolution of disapproval under the CRA, "before it become[s] a law," must have "passed the House of Representatives and the Senate." U.S. Const. art. I, § 7, cl. 2; *see also* 5 U.S.C. § 802(b) ("A joint resolution described in subsection (a) shall be referred to the committees in *each* House of Congress with jurisdiction.") (emphasis added); *id.*

§ 802(f) (describing the procedure by which one house of Congress considers a joint resolution of disapproval under the CRA when, "before the passage by one House of a joint resolution . . . , that House receives from the other House a joint resolution described in subsection (a)"). Although the Amended Complaint is not clear on this point, Plaintiff cannot seriously dispute that joint resolutions of disapproval under the CRA satisfy the bicameralism requirement. *See, e.g.*, Am. Compl. ¶ 41 (noting that the joint resolution of disapproval at issue in this case did, in fact, receive a majority of votes in both the House and the Senate).

Second, CRA resolutions satisfy the presentment requirement: a joint resolution of disapproval under the CRA is not effective until it is "presented to the President of the United States; and" is either "approved by him, or being disapproved by him, shall be repassed by two thirds of the Senate and House of Representatives. . . ." U.S. Const. art. I, § 7, cl. 3; *see* 5 U.S.C. § 801(a)(3)(B) (referring to the possibility that the "the President signs a veto of such resolution" and "either House of Congress votes and fails to override the veto of the President"). Again, although the Amended Complaint is not clear on this point, Plaintiff cannot seriously dispute that joint resolutions of disapproval under the CRA satisfy the presentment requirement. *See, e.g.*, Am. Compl. ¶ 41 (noting that the joint resolution of disapproval at issue in this case was, in fact, signed by the President of the United States).

Plaintiff's constitutional challenge begins and ends there: the Constitution specifies only a few requirements for the Congress to exercise its Article-I legislative powers, and the Congressional Review Act is consistent with each. Curiously, Plaintiff nevertheless relies on *INS v. Chadha* throughout its Amended Complaint, *see* Am. Compl. ¶¶ 4, 27, 28, 52, 68, but *Chadha* conclusively decides this case in Defendants' favor. The Supreme Court rejected the concept of a one-house legislative veto in *Chadha* as inconsistent with the carefully calibrated legislative

process created by the Framers, because a one-house legislative veto of Executive Branch action was not compliant with either the requirements of bicameralism *or* presentment. *Chadha*, 462 U.S. at 958-59. The Congressional Review Act, and joint resolutions of disapproval enacted pursuant to the Act, comply with both.

**B.     Congress may enact laws that override prior inconsistent laws or regulations.**

Perhaps because there is no serious question about the CRA's compliance with Article I of the Constitution, Plaintiff seeks to impose additional constraints on the legislative process. In particular, Plaintiff takes issue with the fact that passage of Public Law 115-20 led the Department of the Interior to "treat[] the Refuges Rule as though it had never taken effect," even though "Congress has not amended—pursuant to the constitutionally-mandated safeguards of bicameralism and presentment—any of the underlying statutory mandates that lead [sic] Interior to promulgate the Refuges Rule." Am. Compl. ¶ 42. This argument fails. As an initial matter, as discussed above, there is no bicameralism or presentment problem here. Public Law 115-20—like the Congressional Review Act itself—passed both houses of Congress, and was signed into law by the President of the United States.

But setting that aside, the basic premise of Plaintiff's argument is mistaken. Plaintiff argues that if Congress wanted to revoke the Refuges Rule (and prevent issuance of similar rules in the future), Congress needed to first amend or repeal "the underlying statutory provisions" that originally authorized its issuance, which Plaintiff seems to believe required—not just permitted—the Secretary of the Interior to issue the Refuges Rule. Am. Compl. ¶ 5. There are at least three defects in this argument.

First, there is simply no such requirement—constitutional or otherwise—that Congress take some clerical action to formally amend or repeal an older law (or regulation) before enacting

a new inconsistent law. Courts routinely apply newer statutory language at the expense of the old without suggesting that this inconsistency is, in itself, of any constitutional moment. *See, e.g.*, *Hellon & Assocs., Inc. v. Phoenix Resort Corp.*, 958 F.2d 295, 297 (9th Cir. 1992) ("In case of an irreconcilable inconsistency between them the later and more specific statute usually controls the earlier and more general one.").

Second, even if there were such a requirement, Congress *did* amend the older statutes that led to the issuance of the Refuges Rule by declaring that, notwithstanding those prior statutes, the Refuges Rule shall have no force and effect. In other words, although the Secretary of the Interior was previously authorized to issue regulations that "suspend, allow, or initiate any activity in a refuge in the [National Wildlife Refuge] System if the Secretary determines it is necessary to protect the health and safety of the public or any fish or wildlife population," 16 U.S.C. § 668dd(k), that authority has been limited by Public Law 115-20 to the extent it relates to the Refuges Rule or any substantially similar rule.

That conclusion flows from a routine application of several principles of statutory construction, including (1) that a more specific enactment (like Public Law 115-20) controls over other general statutory language on the same subject (like the provisions that generally delegate authority to the Department of the Interior to manage the National Wildlife Refuge System), *see, e.g.*, *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2070-72 (2012); (2) that to the extent there is some irreconcilable inconsistency between two statutes, the later-in-time provision (again, Public Law 115-20) generally controls, *see, e.g.*, *United States v. Tynen*, 78 U.S. 88, 92 (1870), and also (3) that the CRA itself makes clear that its provisions "shall apply notwithstanding any other provision of law," 5 U.S.C. § 806(a).

Third, in any event, Plaintiff is also mistaken to suggest that any pre-existing statutes not

just permitted, but actually *required* issuance of the Refuges Rule, and that those statutes therefore conflict with Public Law 115-20. *See* Am. Compl. ¶ 5. In fact, those prior statutes offer generic delegations of authority that leave the Secretary of the Interior with discretion to make reasonable judgments about the sort of regulations (or lack thereof) that will "ensure that the biological integrity, diversity, and environmental health of the [National Wildlife Refuge] System are maintained for the benefit of present and future generations of Americans." 16 U.S.C. § 668dd(a)(4)(B). So Public Law 115-20 does not conflict with any other statute, even though the contrary conclusion would be no cause for concern about the law's constitutionality.

**C.      Congress may amend its delegations of authority to administrative agencies.**

Relatedly, Plaintiff suggests that Public Law 115-20 infringes some constitutional interest of the Department of the Interior and that, therefore, Congress has improperly aggrandized its own power at the expense of the Executive Branch in violation of the constitutional separation of powers. *See* Am. Compl. ¶¶ 5, 55, 73. As support for this argument, Plaintiff focuses on the CRA's prohibition on the issuance of "any future rules" in "substantially the same form" as the Refuges Rule. *Id.* ¶ 64 (quoting 5 U.S.C. § 801(b)(2)).

Plaintiff's theory about the relationship of administrative agencies to Congress under the Constitution is backwards. Administrative agencies, although generally housed within the Executive Branch, are creatures of Congress, and it is therefore beyond dispute that an agency "may not exercise its authority in a manner that is inconsistent with the administrative structure that Congress enacted into law." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125 (2000). That authority can be expanded or contracted, at any time, pursuant to legislative action. *See, e.g., CFTC v. Schor*, 478 U.S. 833, 845 (1986). Therefore, the mission of the Department of the Interior, and the nature of the statutory authority at its disposal to carry out that

mission, are always subject to revision from Congress, in either direction (subject, as always, to the President's veto). Because the Department of the Interior only has the authority to issue binding regulations to the extent that authority is delegated by Congress, the Executive Branch suffers no constitutional injury when Congress amends that delegation of authority, as it did here by both (1) declaring that the Refuges Rule shall have no further force and effect and (2) prohibiting the issuance of any substantially similar rules in the future (that is, unless and until Congress amends that delegation once again).[3]

### D. Plaintiff's conclusory references to the Take Care Clause do not support its constitutional challenge.

Plaintiff repeatedly cites the Take Care Clause as support for its separation-of-powers claims.[4] *See* Am. Compl. ¶¶ 45, 49, 54, 57, 59, 63, 70, 71, 74. Although the Take Care Clause instructs the President to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, it says nothing about whether the Congressional Review Act or Public Law 115-20—both "Laws"

---

[3] In addition to the fact that the CRA's limitations on future rulemaking are consistent with our constitutional structure, that facet of Plaintiff's constitutional claim fails for an additional reason: it is not ripe. Plaintiff has not alleged that the Department of the Interior has any intent to reissue the Refuges Rule (or any substantially similar rule) in the future and that this intent has been thwarted by the CRA's restrictions on its future rulemaking authority. Accordingly, this argument presents nothing more than an "abstract disagreement[] over administrative policies." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003). By the same token, to the extent Plaintiff purports to bring a claim under the APA to challenge some future action (or lack thereof) by the Department of the Interior regarding its management of this particular regulatory scheme, Plaintiff has not identified any discrete, unlawful "final agency action," 5 U.S.C. § 704, that would form the basis of such a claim. *See, e.g.*, *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

[4] Plaintiff's vague and largely unexplained references to the Take Care Clause (and also to the non-delegation doctrine, *see infra* Section I.E.), embedded within the rubric of their broader constitutional challenges, are likely insufficient to state independent claims under Rule 8. *See Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions.") (internal citations omitted); *accord Iqbal*, 556 U.S. at 678. However, even assuming that such threadbare recitals are sufficient to put Defendants on notice of any such claim, both claims are meritless for the reasons set forth herein.

themselves,[5] which the President is obligated to "faithfully execute[]"—are consistent with our constitutional scheme. The Amended Complaint seems to acknowledge that any Take Care Clause argument is largely derivative of Plaintiff's more general separation-of-powers arguments, suggesting that the Take Care Clause is violated only because of the (alleged) bicameralism-and-presentment violation discussed above. *See, e.g.*, Am. Compl. ¶¶ 53-54 ("Because Congress has not amended any of Interior's authorities and obligations with regard to managing the National Wildlife Refuge System, the Joint Resolution, in declaring that the Refuges Rule 'shall have no force and effect,' unconstitutionally impinges upon the authorities and obligations of an Executive Branch agency to 'take Care' that the laws be 'faithfully executed.'"); *see also supra*, Section I.A.

Indeed, Plaintiff's citations to the Take Care Clause should not be construed as adding anything meaningful to its existing constitutional challenges because the Clause does not provide an independent cause of action in this case. The Supreme Court has held that "the duty of the President in the exercise of the power to see that the laws are faithfully executed" is not judicially enforceable, adding that any attempt by the judiciary to oversee the President's Take Care authority "might be justly characterized, in the language of Chief Justice Marshal, as 'an absurd and excessive extravagance.'" *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 499 (1866). Of course, "[r]eview of the legality of Presidential action can ordinarily be obtained in a suit seeking to enjoin the officers who attempt to enforce the President's directive." *Franklin v. Massachusetts*, 505 U.S. 788, 828 (1992) (Scalia, J., concurring in the judgment). But the Take Care Clause, which speaks to the President alone, provides no means for courts to review the actions of subordinate

---

[5] *See generally* Amicus Br. of the States of Wisconsin, Georgia, *et al.*, ECF No. 84, Section I (Section Heading: "A Congressional Review Act Resolution—Which Has Been Passed By Both Houses Of Congress And Signed By The President—Is Simply A Law Of The United States.").

Executive officials like the Secretary of the Interior. A subordinate Executive officer cannot violate the President's duty to faithfully execute the laws, and a court cannot direct the actions of subordinate officers on the basis of the Take Care Clause without exercising authority that the Clause commits to the President himself rather than to courts. To the government's knowledge, no court has *ever* found a violation of the Take Care Clause, by either the President or his subordinates. This case—in which the purportedly unconstitutional action taken by the Executive Branch is an agency's compliance with an unambiguous law passed by Congress, rather than a Presidential directive—should not be the first.

Citing a variety of federal statutes regarding the Secretary of the Interior's general regulatory authority over National Wildlife Refuges, Plaintiff alleges that, "[w]hile Congress may change these laws, it may not direct agencies to act in a manner inconsistent with these laws, for doing so unconstitutionally infringes on the Executive Branch and its obligations to 'take Care' that the laws are 'faithfully executed.'" Am. Compl. ¶¶ 49, 63. But Plaintiff never offers any support for this counterintuitive proposition. In exercising its authority under the Congressional Review Act, Congress (with the President's signature) has changed the law, eliminating the Department of the Interior's authority to issue the Refuges Rule. This change in the law does not affect or interfere with the President's authority under the Take Care Clause, after all, the "laws" that the President is directed to execute faithfully include acts of Congress (and include joint resolutions that are signed into law). Accordingly, Plaintiff has not alleged a violation of the Take Care Clause, to the extent such a claim is even cognizable in the federal courts (and cognizable against the Secretary of the Interior).[6]

---

[6] Plaintiff also cites the Take Care Clause in support of its statutory claim. *See* Am. Compl. ¶ 90. But it is entirely unclear what relevance the Clause could have to Plaintiff's statutory claim, which is based on the argument

## E. Plaintiff's references to the non-delegation doctrine do not support its constitutional challenge.

Plaintiff also makes passing references to an allegedly "unconstitutional shadow effect," Am. Compl. ¶ 72, created by the CRA's prohibition on rules that are "substantially the same as" any disapproved rule, 5 U.S.C. § 801(b)(2). Plaintiffs allege that this provision of the CRA contains no "intelligible principle" to guide the agency and that, as a result, it will be "difficult, if not impossible, for Interior to carry out its statutory obligations, as Interior cannot reasonably discern what Congressional mandates still apply, or how, going forward, it can manage the National Wildlife Refuge System in Alaska consistent with those mandates." Am. Compl. ¶ 72. This claim fails for multiple reasons.

First, any such claim is not justiciable. Plaintiff has not alleged that the Department of the Interior has any intent to reissue the Refuges Rule (or any substantially similar rule) in the future and that 5 U.S.C. § 801(b)(2) is what stands in its way—Plaintiff only speculates that the Department of the Interior might be prevented from doing so at some future date. Accordingly, any such claim should be dismissed as an "abstract disagreement[] over administrative policies," *Nat'l Park Hosp. Ass'n*, 538 U.S. at 807, that is not ripe for judicial intervention or, similarly, for lack of Article-III standing.[7] And for much the same reasons, Plaintiff has not identified any discrete "final agency action," 5 U.S.C. § 704, that would support an APA challenge to this provision of the CRA. *See Bennett*, 520 U.S. at 177-78.

_____

that *Congress* misinterpreted the CRA in passing Public Law 115-20. But Congress's application of the CRA in Public Law 115-20 does not implicate the President's authority under the Take Care Clause.

[7] As a practical matter, "[t]he constitutional component of the ripeness inquiry is often treated under the rubric of standing." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000); *see also id.* ("Sorting out where standing ends and ripeness begins is not an easy task. Indeed, because the focus of our ripeness inquiry is primarily temporal in scope, ripeness can be characterized as standing on a timeline.").

Second, even if Plaintiff had standing to raise a ripe non-delegation claim, in exercising its authority under the CRA, Congress is not delegating any authority to Interior, rather it is withdrawing authority previously delegated. Public Law 115-20 removes from Interior the authority to promulgate the Refuges Rule or any substantially similar rule. The non-delegation doctrine addresses delegations of authority, not congressional enactments, like the CRA and Public Law 115-20, which are explicitly designed to maintain some measure of congressional control over the administrative state. The animating purpose of the non-delegation doctrine is to ensure that Congress's delegations of authority to administrative agencies did not result in Congress ceding its legislative powers to administrative agencies within the Executive Branch in violation of our basic constitutional structure. *See, e.g.*, *Mistretta v. United States*, 488 U.S. 361, 371-72 (1989) (summarizing history of the doctrine). The Congressional Review Act itself was passed by Congress in furtherance of that same goal.

Third, there is no merit to the suggestion that an intelligible principle is lacking in the Congressional Review Act. The relevant provision in the statute, as applied to Public Law 115-20, is extremely specific, in that it is directed to one particular regulation regarding the hunting of bears and wolves on National Wildlife Refuges in Alaska. The Department of the Interior knows precisely what not to do going forward: absent additional congressional action, it shall not "reissue[]" the Refuges Rule "in substantially the same form," nor any new regulations that are "substantially the same as" as the Refuges Rule. 5 U.S.C. § 801(b)(2). The Supreme Court and other federal courts have routinely upheld challenges to more vague statutory provisions under the non-delegation doctrine. *Yakus v. United States*, 321 U.S. 414, 420-25 (1944); *see also Mistretta*, 488 U.S. at 379; *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472-76 (2001). Indeed, the Supreme "Court has countenanced as intelligible seemingly vague principles in statutory text such

as whether something would 'unduly or unnecessarily complicate,' or be 'generally fair and equitable,' in the 'public interest,' or 'requisite to protect the public health.'" *In re NSA Telecomms. Records Litig.*, 671 F.3d 881, 896 (9th Cir. 2011) (internal citations omitted).

*   *   *

In sum, both the Congressional Review Act generally, and Public Law 115-20 specifically, were enacted in full compliance with the Constitution's requirements of bicameralism and presentment. Plaintiff's suggestions of additional constitutional constraints on either the legislative process as a whole, or delegations to administrative agencies in particular, are neither required by, nor consistent with, our constitutional structure—whether or not they would be wise procedural innovations. *See Chadha*, 462 U.S. at 959. Plaintiff cannot impose new constitutional requirements any more than the legislative veto rejected in *Chadha* could evade the existing ones. And Plaintiff's references to the Take Care Clause and the non-delegation doctrine add nothing of merit to its constitutional claims. For these reasons, Plaintiff's constitutional challenges to the Congressional Review Act and Public Law 115-20 fail, and each of those claims should be dismissed with prejudice.[8]

## II.   PLAINTIFF'S STATUTORY CLAIM IS NOT JUSTICIABLE.

Plaintiff also brings a statutory claim, arguing that Congress failed to comply with the Congressional Review Act in enacting Public Law 115-20. Plaintiff claims that both houses of Congress improperly treated H.R.J. Res. 69 as if it were subject to the procedures of the

---

[8] Plaintiff makes a passing suggestion that the CRA's alleged violation of the Constitution could support an APA claim against the Department of the Interior, arguing that "[t]o the extent Interior has relied upon the Joint Resolution to revoke, refuse to implement or otherwise nullify the Refuges Rule, that decision is contrary to law in violation of the APA." Am. Compl. ¶¶ 57, 74. To the extent Plaintiff intends to bring such a claim under the APA, it fails because there is no constitutional violation, and also for the same reasons discussed in more detail *infra*, Section III.B., regarding the merits of Plaintiff's statutory claim.

Congressional Review Act, when in fact it was not, because the extra review time afforded by the CRA's "carryover" provision does not apply to hunting regulations like the Refuges Rule. According to Plaintiff, the joint resolution of disapproval is therefore invalid, and the Department of the Interior's reliance on it is *ultra vires*, unlawful, and should be set aside under the APA. *See* 5 U.S.C. § 706(2)(C) (allowing a court to "set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations").

This Court lacks jurisdiction over Plaintiff's statutory claim for two independent reasons: (1) the Congressional Review Act explicitly bars judicial review of any "determination, finding, action, or omission," 5 U.S.C. § 805, under the Act; and (2) this is effectively an as-applied challenge to the House and Senate rules, which are textually committed by the Constitution to each house of Congress and only subject to judicial review in rare circumstances not presented here. Accordingly, Plaintiff's statutory claim should be dismissed for lack of subject-matter jurisdiction.

**A.** **The Congressional Review Act expressly bars judicial review of Plaintiff's claim that Congress misinterpreted the CRA.**

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013). "Congress may withhold from any court of its creation jurisdiction of any of the enumerated controversies. Courts created by statute can have no jurisdiction but such as the statute confers." *Sheldon v. Sill*, 49 U.S. 441, 449 (1850). Although the APA "confers a general cause of action upon persons 'adversely affected or aggrieved by agency action within the meaning of a relevant statute,' 5 U.S.C. § 702," it also "withdraws that cause of action to the extent the relevant statute 'precludes judicial review,' 5 U.S.C. § 701(a)(1)." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984);

*see also Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir. 1998).

       i.      <u>Traditional APA review is foreclosed by 5 U.S.C. § 805.</u>

The plain language of the Congressional Review Act unambiguously "preclude[s] judicial review," 5 U.S.C. § 701(a)(1), of Plaintiff's claim that Congress misinterpreted the CRA. *See Block*, 467 U.S. at 345. Section 805 of the Act reads as follows: "No determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. Here, Plaintiff argues that both the House and the Senate misread the procedural requirements of the statute and erroneously applied it in enacting Public Law 115-20. But that it is a challenge to a "determination, finding, action, or omission under" the CRA, by the House and the Senate—specifically, to their interpretation of the applicability of the CRA's carryover provision—and it is therefore not "subject to judicial review." 5 U.S.C. § 805. For that simple reason, the claim should be dismissed for lack of subject-matter jurisdiction.

Most courts have interpreted Section 805 to mean that no judicial review is available under the CRA. *See, e.g.*, *Montanans For Multiple Use v. Barbouletos*, 568 F.3d 225, 229 (D.C. Cir. 2009) (holding that 5 U.S.C. § 805 "denies courts the power to void rules on the basis of agency noncompliance with the Act"); *Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*, 509 F.3d 1259, 1271 n.11 (10th Cir. 2007) ("The Congressional Review Act specifically precludes judicial review of an agency's compliance with its terms."). And the few courts that have entertained the possibility of some judicial review for non-compliance with the CRA (in conflict with the D.C. Circuit and the 10th Circuit) have suggested that although judicial review might be available to challenge *agency* non-compliance with the CRA, the statutory bar to judicial review would still apply to cases—like this one—challenging actions or omissions by *Congress*. *See United States v. S. Indiana Gas & Elec. Co.*, 2002 WL 31427523, at *5 (S.D. Ind. Oct. 24, 2002) (suggesting that

judicial review of *agency* non-compliance was permissible, but reasoning that "Congress only intended to preclude judicial review of *Congress'* own determinations, findings, actions, or omissions made under the CRA after a rule has been submitted to it for review") (emphases added).

ii.    The *Leedom v. Kyne* exception does not apply.

Although the Amended Complaint is unclear, Plaintiff's labeling of its statutory claim as challenging an "*Ultra Vires* Revocation" might have been an attempt to avoid the CRA's explicit bar to judicial review by relying on the rarely invoked doctrine originally set forth in *Leedom v. Kyne*, 358 U.S. 184 (1958).   Under *Leedom*, at least in certain narrow circumstances, judicial review of a claim that an agency acted *ultra vires* (*i.e.*, beyond its statutory authority) might still be permissible—even in the face of a bar to judicial review that would otherwise foreclose a normal APA challenge—when an agency acts "in excess of its delegated powers and contrary to a specific prohibition" in its organic statute, and in doing so "deprive[s]" a party "of a 'right' assured to them by Congress."    *Leedom*, 358 U.S. at 188-89; *see also Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009).   But even assuming that *Leedom* remains good law in the Ninth Circuit outside the specific context of certain labor disputes—and there is reason to be skeptical of that proposition[9]—it does not apply here.

First, to the extent Plaintiff argues that the Court has jurisdiction to decide whether the Department of the Interior's *reliance* on Public Law 115-20 is itself *ultra vires*—an argument that would fail on the merits, as explained *infra*, Section III.B—that cannot satisfy the *Leedom* exception permitting judicial review of an otherwise-barred *ultra vires* claim.   That is because

---

[9] *See, e.g.*, *Amerco v. NLRB*, 458 F.3d 883, 889 (9th Cir. 2006) ("The exceptions of *Fay* and *Leedom* derive from the inequity that would result if no court could review claims that the NLRB acted unconstitutionally or contrary to statutory authority in a Section 9 determination.").

the internal strictures of the Congressional Review Act that Plaintiff complains about are addressed only to Congress, not to the statutory authority of the Department of the Interior. *Compare Leedom*, 358 U.S. at 188 (discussing statutory limits on *agency* authority). Defendants are not aware of any case in which a court expanded *Leedom* to exercise jurisdiction over a challenge to an alleged legal misstep by Congress.

Second, despite labeling this claim as challenging "*ultra vires*" agency action, Plaintiff never identifies any "specific prohibition," *Leedom*, 358 U.S. at 188, which the Department of the Interior exceeded. To the extent Plaintiff relies on the generic delegations of authority to the Secretary of the Interior to manage the National Wildlife Refuge System, those cannot form the basis for an *ultra vires* claim under *Leedom*, given the agency's discretion to make reasonable policy judgments in this area. *See, e.g.*, *Staacke v. U.S. Sec'y of Labor*, 841 F.2d 278, 282 (9th Cir. 1988) (rejecting a *Leedom* claim, reasoning that the wide discretion delegated to the Secretary of Labor "to make the policy choices associated with disability decisions" means that "there can be no review based on a violation of a clear statutory mandate"); *accord Nyunt*, 589 F.3d at 449 (*Leedom* applies only where "the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory").

Finally, the *Leedom* exception "applies . . . only where . . . the statutory preclusion of review is implied rather than express." *Nyunt*, 589 F.3d at 449. Here, the statutory preclusion of review in the CRA is explicit and unambiguous. *See* 5 U.S.C. § 805. Accordingly, Plaintiff cannot use the *Leedom* exception to dodge the clear statutory bar to judicial review in the CRA,

and the Court should dismiss Plaintiff's statutory claim for lack of subject-matter jurisdiction.[10]

**B.    The Court lacks jurisdiction to review Plaintiff's challenge to the rules of the Senate or the House of Representatives.**

Even without the statutory bar to judicial review in the CRA itself, this Court would still lack subject-matter jurisdiction over Plaintiff's statutory claim.   That is because, at bottom, Plaintiff's claim amounts to an as-applied challenge to the House and Senate rules, as the only alleged impropriety here was that *Congress* mistakenly interpreted its own procedures by voting on H.R.J. Res. 69 after Congress's internal deadline to consider such a resolution had elapsed. But each house of Congress has explicit and exclusive constitutional authority to "determine the Rules of its Proceedings," U.S. Const. art. I, § 5, cl. 2, and a long line of precedent confirms that judicial intrusion into those rules is forbidden in all but the rarest of circumstances (which do not apply here).

"The constitution empowers each house to determine its rules of proceedings."   *United States v. Ballin*, 144 U.S. 1, 5 (1892).   In doing so, neither house of Congress may "ignore constitutional restraints or violate fundamental rights," but other than that narrow limitation the power of each house to set its internal rules is "absolute and beyond the challenge of any other body or tribunal."   *Id.*; *accord NLRB v. Noel Canning*, 134 S. Ct. 2550, 2574 (2014) ("[W]e have held that 'all matters of method are open to the determination' of the Senate, as long as there is 'a reasonable relation between the mode or method of proceeding established by the rule and the result which is sought to be attained' and the rule does not 'ignore constitutional restraints or violate fundamental rights.'" (quoting *Ballin*, 144 U.S. at 5)); *see also Rangel v. Boehner*, 20 F.

---

[10]  Whether or not the bar to judicial review in 5 U.S.C. § 805 is properly styled as "jurisdictional"—and Defendants submit that it is, *see Barbouletos*, 568 F.3d at 229—it is at least mandatory and therefore requires dismissal under Rule 12.

Supp. 3d 148, 169 (D.D.C. 2013) ("The House may not, by enacting and enforcing its own rules of procedure, violate another constitutional provision or an individual's rights under the Constitution, but the exercise of its discretion under the [Rulemaking and Discipline] Clause[s] is otherwise boundless."), *aff'd*, 785 F.3d 19 (D.C. Cir. 2015).

As for Plaintiff's statutory claim, it contains no allegation that Congress has "ignore[d] constitutional restraints or violate[d] fundamental rights." *Ballin*, 144 U.S. at 5. Therefore, Congress's judgments on this matter are "absolute and beyond the challenge of any other body or tribunal," *id.*, including this Court. Accordingly, this Court lacks subject-matter jurisdiction to consider Plaintiff's challenge to Congress's application of its own internal rules, and its statutory claim should be dismissed. *See, e.g.*, *Metzenbaum v. FERC*, 675 F.2d 1282, 1288 (D.C. Cir. 1982) ("To invalidate Pub. L. No. 97-93 on the ground that it was enacted in violation of House rules would be to declare as erroneous the understanding of the House of Representatives of rules of its own making, binding upon it only by its own choice. We must assume that the House acted in the belief that its conduct was permitted by its rules, and deference rather than disrespect is due that judgment.").

To be sure, there are some provisions in the CRA that are not solely addressed to the internal procedural rules of the House and the Senate. *See, e.g.*, 5 U.S.C. § 801(b)(2). But Plaintiff's statutory claim focuses solely on the timing of the passage of H.R.J. Res. 69, and argues only that Congress missed its own internal deadline for consideration of the joint resolution called for by the CRA. That sort of claim cannot be considered in any court.

That result is consistent with the exclusive nature of the congressional rulemaking power. There is no dispute that, for example, at any time, the Senate could amend its own rules relating to the process by which it considers all legislation, or all hunting legislation, or all legislation related

to recently issued agency rules. None of those changes to internal congressional procedures would raise any constitutional problem. *See Ballin*, 144 U.S. at 5 ("The power to make rules is not one which once exercised is exhausted. It is a continuous power, always subject to be exercised by the house."). And none of them could be challenged in this Court, as they neither "ignore constitutional restraints [n]or violate fundamental rights." *Id.* The same is true for Plaintiff's statutory claim here.

Nor is there any dispute that even without the Congressional Review Act, Congress could have, at any time, passed a law that both (1) repealed the Refuges Rule and (2) prohibited any substantially similar rules from being issued by the Department of the Interior. The fact that such a law (at least under current Senate rules) might have been subject to a filibuster is, of course, of no constitutional significance, as the Senate filibuster is not mentioned in, let alone required by, the Constitution. What Plaintiff challenges, therefore, is not the substance of the underlying congressional action itself, but rather the process by which Congress carried out that action. This Court lacks jurisdiction to consider such a claim.

## III. PLAINTIFF'S STATUTORY CLAIM FAILS ON THE MERITS.

Even if the Court had subject-matter jurisdiction to consider it, Plaintiff's statutory claim would nevertheless fail to state a claim. As an initial matter, Plaintiff has misread the statute in arguing that Congress misapplied the CRA in disapproving of the Refuges Rule. And even if Plaintiff were correct that Congress had misinterpreted its own procedures, that would still not warrant relief against the Department of the Interior, which played no role in this process except for complying with the requirement to submit a timely CRA report.

### A. The CRA's carryover provision (5 U.S.C. § 801(d)) still applies to agency rules that are subject to the CRA's hunting exception (5 U.S.C. § 808(1)).

The CRA's "carryover" provision, 5 U.S.C. § 801(d), allows Congress to invoke the CRA's review and disapproval procedures in a later congressional session, in the case of a CRA report that was submitted at the end of the prior congressional session. *See* CRS Report at 15 ("If, within 60 days of session in the Senate or 60 legislative days in the House after the receipt by Congress of a rule, Congress adjourns its session *sine die*, the periods to submit and act on a disapproval resolution 'reset' in their entirety in the next session of Congress.") (internal footnotes omitted). That provision reads, in relevant part:

> In addition to the opportunity for review otherwise provided under this chapter, in the case of any rule for which a report was submitted in accordance with subsection (a)(1)(A) during the period beginning on the date occurring—
>
> > (A) in the case of the Senate, 60 session days, or
> >
> > (B) in the case of the House of Representatives, 60 legislative days,
>
> before the date the Congress adjourns a session of Congress through the date on which the same or succeeding Congress first convenes its next session, section 802 shall apply to such rule in the succeeding session of Congress.

5 U.S.C. § 801(d)(1); *see also id.* § 801(d)(2) (explaining that, for rules subject to this provision, the 60-day review clock starts running on the 15th "legislative day" or "session day" of the next session of Congress). The carryover provision therefore addresses the question of when a subsequent session of Congress may act pursuant to the CRA to review and disapprove of an agency rule issued near the end of the prior session of Congress. The carryover provision happens to be located within Section 801 of the CRA (the statute's longest section), which, in other sub-sections, also includes some language about the effective date of agency rules. *See id.* § 801(a)(3) (effective date of "major rule[s]"); *id.* § 801(a)(4) (effective date of other rules).

Plaintiff argues that Congress improperly invoked the carryover provision to disapprove of the Refuges Rule because that rule was subject to an exception in Section 808 of the Act as a rule that purportedly "modifies . . . a regulatory program for . . . activity related to hunting." *Id.* § 808(1). Section 808—titled "Effective date of certain rules"—reads as follows:

> Notwithstanding section 801—
>
>> (1) any rule that establishes, modifies, opens, closes, or conducts a regulatory program for a commercial, recreational, or subsistence activity related to hunting, fishing, or camping, or
>>
>> (2) any rule which an agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rule issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest,
>
> shall take effect at such time as the Federal agency promulgating the rule determines.

5 U.S.C. § 808.

As its title indicates, Section 808 speaks only to the question of when a rule becomes effective; it has no bearing on the separate question of how much time Congress has to pass a resolution of disapproval under the CRA. Plaintiff is correct that Section 808 applies "[n]otwithstanding section 801." But the only sensible reading of the two statutory provisions, taken together, is that Section 808 refers to (and overrides) the language in Section 801 *about the effective date* of certain agency rules—but not the unrelated deadlines for passage of a joint resolution of disapproval (some of which are provided for in the carryover provision, and which happen to be included in subsection (d) of Section 801).

In other words, rules that are subject to the hunting exception in Section 808 "shall take effect at such time as the Federal agency promulgating the rule determines"—not in the time and

the manner otherwise provided for in Section 801.   *See* 5 U.S.C. § 801(a)(3) (in the case of a "major rule," 60 days after submission of the CRA report); *id.* § 801(a)(4) (in the case of all other rules, "as otherwise provided by law after submission" of the CRA report).   But there is no reference—implicit or explicit—to Section 801(d)'s carryover provision in the Section 808 exception.   Nor is there any logical connection between the two provisions, which are targeted at separate topics—one addressed to the effective date of certain specific types of rules, the other addressed to the amount of time Congress has to disapprove of *any* rule submitted to Congress near the end of the prior legislative session.   Accordingly, Section 808 is not a limitation on Section 801(d), and Section 801(d) therefore applies to agency rules relating to hunting as it would to any other agency rule.

The only specific basis that Plaintiff offers to argue that rules subject to the Section 808 exception are also exempted entirely from congressional review in a subsequent Congress is the language in the carryover provision that provides that it applies "in the case of any rule for which a report was submitted in accordance with subsection (a)(1)(A)."   5 U.S.C. § 801(d)(1). Plaintiff argues that, in the case of regulations subject to the hunting exception in Section 808 (including the Refuges Rule, according to Plaintiff), a CRA report is not required to be submitted under 5 U.S.C. § 801(a)(1)(A) to make the rule effective and that, therefore, the triggering language in Section 801(d)(1) is not implicated.   *See* Am. Compl. ¶ 86.   This argument misses the mark, for several reasons.

First, although it is true that a CRA report is not required to be submitted under 5 U.S.C. § 801(a)(1)(A) *to make a hunting regulation effective*, it is still *required to be submitted* under 5 U.S.C. § 801(a)(1)(A).   That provision says that an agency "shall submit" a CRA report when it issues "a rule," and specifies that the report include certain information about "the rule."   5 U.S.C.

§ 801(a)(1)(A).   Therefore, whatever that report means for the effective date of an agency rule, the provision still provides that an agency "shall submit" a CRA report under 5 U.S.C. § 801(a)(1)(A) when it issues "a rule."   That requirement should come as no surprise because the submission of a CRA report is still significant, for any rule, whether or not it has any bearing on that rule's effective date.   The submission of a CRA report still triggers a variety of significant deadlines and sets a process in motion by which Congress may (or may not) pass a joint resolution disapproving of the rule (as happened here).   *See, e.g.*, 5 U.S.C. § 801(a)(2)(A) (requiring the Comptroller General to "provide a report on each major rule" to certain congressional committees "by the end of 15 calendar days after the submission [of the CRA report] or publication" of the rule in the Federal Register, whichever is later); *id.* § 802(c) (setting a 20-day period, from that same "submission or publication date," after which a discharge petition may be signed by 30 Senators to force a CRA resolution on to the Senate calendar).   In other words, because submission of a CRA report may have significance that goes well beyond the effective date of a given rule, Section 808's specific provisions that modify the effective date of certain rules do not eliminate altogether the requirement that an agency submit a CRA report under Section 801(a)(1)(A).

Second, the triggering language of the carryover provision applies to "any rule *for which a report was submitted* in accordance with subsection (a)(1)(A)," as long as the report was submitted late enough in a given congressional session.   5 U.S.C. § 801(d)(1) (emphasis added).   That is, the text of the provision is keyed to whether the report was *actually submitted*—not whether it was *required* to be submitted.   So even if Plaintiff were right that an agency issuing a hunting rule subject to Section 808's effective-date exception need not submit a CRA report, all that matters for purposes of the applicability of the carryover provision is whether such a report was, in fact,

submitted. And here there is no dispute that a CRA report was, in fact, submitted. *See* GAO Federal Rules Summary Listing, http://www.gao.gov/fedrules/186189. Nor is there any dispute that it was submitted sufficiently close to the end of the 114th Congress, *see id.*, that it triggered the carryover provision and allowed review at the beginning of the 115th Congress, *see* 5 U.S.C. § 801(d)(1).

Finally, Plaintiff suggests that submission of the CRA report for the Refuges Rule happened "if at all,"[11] for reasons "entirely irrespective" of 5 U.S.C. § 801(a)(1)(A), and that it therefore could not have been submitted "in accordance with" that provision. *See* Am. Compl. ¶ 86. But there is no other provision in the CRA—nor in any other provision of law, to Defendants' knowledge—that requires submission of such a report to Congress and the Comptroller General. Plaintiff has no explanation as to why the Department of the Interior submitted a Congressional Review Act report on October 5, 2016 if it was not doing so "in accordance with" 5 U.S.C. § 801(a)(1)(A). And as explained above, Section 801(a)(1)(A) commands that an agency "shall submit" a CRA report when issuing "a rule," so the Department of the Interior's October 5, 2016 submissions must have been "in accordance with" that requirement. Indeed, the Department of the Interior explicitly cited the Congressional Review Act in its report to the House of Representatives. *See* 162 Cong. Rec. H6169 (daily ed. Nov. 14, 2016) (submitting the report "pursuant to 5 U.S.C. 801(a)(1)(A)"); *see also* 162 Cong. Rec. S6346 (daily ed. Nov. 15, 2016) (noting that the Senate report was being submitted "pursuant to law").

---

[11] The CRA report for the Refuges Rule was submitted on October 5, 2016. *See* GAO Federal Rules Summary Listing, http://www.gao.gov/fedrules/186189.

**B.** **Even if Congress had violated the procedural requirements of the Congressional Review Act, it is not *ultra vires* for the Department of the Interior to comply with Congress's command.**

Finally, even assuming that Congress had misread the Congressional Review Act by improperly applying the carryover provision to the Refuges Rule, Plaintiff's claim would still be meritless. That is because the only named Defendants are the Department of the Interior and the Secretary of the Interior (in his official capacity). And Plaintiff's statutory claim is therefore premised on the allegation that the Department of the Interior acted "in excess of statutory . . . authority." 5 U.S.C. § 706(2)(C); *see also* Am. Compl. ¶ 90. But whether or not *Congress* complied with the CRA in all respects in passing Public Law 115-20, it cannot be *ultra vires* for *the Department of the Interior* to comply with an unambiguous congressional command. And in Public Law 115-20, Congress was explicit: from that day forward, the Refuges Rule "shall have no force or effect." The Department of the Interior cannot be faulted for taking Congress at its word, and it cannot be *ultra vires* or "in excess of statutory . . . authority," 5 U.S.C. § 706(2)(C), for a federal agency to obey the terms of an unambiguous federal law. Taking the contrary view would surely have led to the filing of other claims under the APA, as the Department of the Interior would have been acting in clear contravention of federal law. In sum, to the extent Plaintiff is aggrieved by some procedural misstep by Congress, that still does not mean that the Department of the Interior took any action that was beyond its statutory authority. Plaintiff's statutory claim against the Department of the Interior therefore fails to state a claim.

## CONCLUSION

For the foregoing reasons, Plaintiff's amended complaint should be dismissed with prejudice.

DATE: October 6, 2017     Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

BRYAN SCHRODER
Acting United States Attorney

BRETT A. SHUMATE
Deputy Assistant Attorney General
Civil Division

ERIC R. WOMACK
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Stephen M. Pezzi*
STEPHEN M. PEZZI
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530
Phone: (202) 305-8576
Fax: (202) 616-8470
Email: stephen.pezzi@usdoj.gov
D.C. Bar No. 995500

RICHARD L. POMEROY
Assistant United States Attorney
222 West Seventh Avenue, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
Email: richard.pomeroy@usdoj.gov

*Attorneys for Defendants*