# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

CENTER FOR BIOLOGICAL
DIVISION,

              Plaintiff,

     v.

RYAN ZINKE, in his official capacity as
Secretary of the Interior; and UNITED
STATES DEPARTMENT OF THE
INTERIOR,

              Defendant,

STATE OF ALASKA,

              Defendant-
              Intervenor,

PACIFIC LEGAL FOUNDATION, *et al.*,

              Defendant-
              Intervenors,

SAFARI CLUB INTERNATIONAL, *et al.*,

              Defendant-
              Intervenors.

Case No. 3:17-cv-00091-SLG

## ORDER RE MOTIONS TO DISMISS

Plaintiff Center for Biological Diversity ("CBD") challenges the constitutionality of the Congressional Review Act ("CRA"), pursuant to which Congress recently passed legislation disapproving a Fish and Wildlife Service rule that prohibited certain hunting and trapping practices on National Wildlife Refuges in Alaska. CBD's challenge rests

primarily on allegations that the CRA and the congressional oversight of regulations that it allows for violate the separation of powers doctrine.

Before the Court are the following four motions: (1) Defendants Ryan Zinke and Department of the Interior's Renewed Motion to Dismiss at Docket 107[1]; (2) Defendant-Intervenors Safari Club International, *et al.*'s Motion to Dismiss at Docket 110; (3) Defendant-Intervenors Pacific Legal Foundation, *et al.*'s Renewed Motion to Dismiss at Docket 113[2]; and (4) Defendant-Intervenor State of Alaska's Motion to Dismiss at Docket 116. The motions have been extensively briefed.[3] Oral argument was not requested and was not necessary to the Court's decision.

## BACKGROUND

On August 5, 2016, the U.S. Fish & Wildlife Service ("FWS") finalized a rule entitled "Non-Subsistence Take of Wildlife, and Public Participation and Closure Procedures, on National Wildlife Refuges in Alaska," also known as the "Refuges Rule."[4] The Refuges Rule restricted the use of predator control methods and prohibited certain hunting and trapping methods on National Wildlife Refuges in Alaska.[5] FWS is a bureau within the

---

[1] Federal Defendants filed their first motion to dismiss on June 26, 2017 at Docket 62. After CBD filed its Amended Complaint on September 1, 2017, Federal Defendants filed the instant renewed motion to dismiss on October 6, 2017.

[2] Defendant-Intervenors filed their initial proposed motion to dismiss on May 4, 2017 at Docket 27. A memorandum in support of the motion to dismiss was filed the same day at Docket 28.

[3] *See* Docket 108 (Federal Defendants Mem. in Support); Docket 111 (PLF Mem. in Support); Docket 114 (Safari Club Mem. in Support); Docket 117 (Alaska Mem. in Support); Docket 119 (CBD Opp.); Docket 123 (Safari Club Reply); Docket 124 (Alaska Reply); Docket 125 (PLF Reply); Docket 126 (DOI Reply); *see also* Docket 84 (*Amicus Curiae* Brief of the States of Wisconsin, Georgia, Alabama, Arizona, Arkansas, Indiana, Kansas, Louisiana, Missouri, Nebraska, Nevada, Oklahoma, South Carolina, Texas, and Utah in Support of Defendants).

[4] *See* 81 Fed. Reg. 52247 (Aug. 5, 2016).

[5] The Refuges Rule defined predator control as "the intention to reduce the population of

Department of the Interior ("DOI" or "Interior").[6]

The CRA allows for congressional disapproval of rules promulgated by administrative agencies.[7] Acting pursuant to the CRA, 5 U.S.C. § 801 *et seq.*, on February 7, 2017, the House of Representatives introduced H.J. Res. 69 (the "Joint Resolution") to disapprove the Refuges Rule. On February 16, 2017, the Joint Resolution passed the House by a vote of 225 – 193. On March 21, 2017, the Joint Resolution passed the Senate by a vote of 52 – 47. The Joint Resolution provides:

> Resolved by the Senate and House of Representatives of the United States of America in Congress assembled, That Congress disapproves the rule

predators for the benefit of prey species" and prohibited it on National Wildlife Refuges in Alaska "unless it is determined necessary to meet refuge purposes; is consistent with Federal laws and policy; and is based on sound science in response to a conservation concern." 81 Fed. Reg. 52247.

The Refuges Rule also prohibited the following specific practices on National Wildlife Refuges in Alaska:

- Taking black or brown bear cubs or sows with cubs (exception allowed for resident hunters to take black bear cubs or sows with cubs under customary and traditional use activities at a den site October 15-April 30 in specific game management units in accordance with State law);
- Taking brown bears over bait;
- Taking of bears using traps or snares;
- Taking wolves and coyotes during the denning season (May 1-August 9); and
- Taking bears from an aircraft or on the same day as air travel has occurred. The take of wolves or wolverines from an aircraft or on the same day as air travel has occurred is already prohibited under current refuge regulations.

81 Fed. Reg. 52247. CBD contends that the Refuges Rule is necessary to prevent these practices from being utilized pursuant to the policy of "intensive management" implemented by Alaska's Board of Game. Docket 104 (Am. Compl.) at 8–9, ¶¶ 30–35.

[6] DOI's authority to regulate National Wildlife Refuges in Alaska derives from the National Wildlife Administration Act of 1966 ("Administration Act"), as amended by the National Wildlife Refuge System Improvement Act of 1997 ("Improvement Act"), 16 U.S.C. §§ 668dd-ee, and the Alaska National Interest Lands Conservation Act ("ANILCA"), 16 U.S.C. §§ 410hh-3233, 43 U.S.C. §§ 1602-1784.

[7] *See infra* pp. 9–10.

submitted by the Department of the Interior relating to "Non-Subsistence Take of Wildlife, and Public Participation and Closure Procedures, on National Wildlife Refuges in Alaska" (81 Fed. Reg. 52247 (August 5, 2016)), and such rule shall have no force or effect.[8]

On April 3, 2017, President Trump signed the Joint Resolution into law as Public Law 115-20.[9] On November 9, 2017, FWS formally removed the text of the Refuges Rule from the Federal Register.[10] Pursuant to the CRA, Public Law 115-20 prevents DOI from "reissuing" the Refuges Rule "in substantially the same form" or issuing "a new rule that is the substantially the same, unless the reissued or new rule is specifically authorized by a law enacted after the date of the joint resolution disapproving the original rule."[11]

Plaintiff CBD is a non-profit 501(c)(3) organization dedicated to conservation issues with more than 48,500 members across the United States.[12] On April 20, 2017, CBD initiated the instant case by filing suit in this Court.[13] On September 1, 2017, CBD filed its Amended Complaint, which challenges the constitutionality of the Joint Resolution and the Congressional Review Act and makes a statutory claim under the CRA.

---

[8] H.J. Res. 69; *see* Docket 104 at 11, ¶ 41.

[9] The parties refer to both the Joint Resolution and Public Law 115-20. Although CBD refers almost exclusively to the Joint Resolution, the final enactment was signed into law as Public Law 115-20, and the Federal Defendants and Defendant-Intervenors refer to it as such. The Joint Resolution and Public Law 115-20 contain identical wording and are effectively the same legislative action. Therefore, they are essentially interchangeable as used in the pleadings. However, because Public Law 115-20 is the final legislative action signed by the President, the Court refers primarily to Public Law 115-20 in this order.

[10] 8 Fed. Reg. 52009. CBD maintains that it is challenging this action, despite predominately focusing its analysis on the actions of Congress. *See* Docket 119 at 46 n.14.

[11] 5 U.S.C. § 801(b)(2). This provision is referred to as the "Reenactment Provision" and is discussed in more detail below.

[12] Docket 104 at 4, ¶ 12.

[13] Docket 1 (Compl.).

CBD makes two primary constitutional claims in its Amended Complaint: (1) the CRA and Public Law 115-20 both violate the Article I requirements of Bicameralism and Presentment,[14] and (2) the CRA and Public Law 115-20 both violate Article II's "Take Care" Clause.[15] CBD also contends that Public Law 115-20 represents an *ultra vires* exercise of congressional authority because the CRA exempts regulations related to hunting and fishing from certain aspects of the law.

CBD names Ryan Zinke, in his official capacity as Secretary of the United States Department of the Interior, and the Department of the Interior as Defendants (collectively, "Federal Defendants").[16] Pacific Legal Foundation, Alaska Outdoor Council, Big Game Forever, Kurt Whitehead, and Joe Letarte (collectively, "PLF") were permitted to intervene in their capacities as non-profit organizations, hunters, and business owners, respectively.[17] Safari Club International and the National Rifle Association of America (collectively, "Safari Club") were permitted to intervene in their capacities as non-profit organizations asserting interests in hunting and wildlife.[18] The State of Alaska ("Alaska")

---

[14] U.S. Const., art. I, § 7, cl. 2.

[15] U.S. Const., art. II, § 3. CBD also contends that these unconstitutional actions give rise to violations of the Administrative Procedure Act, § 5 U.S.C. § 706(2). *See* Docket 104 at 15, ¶ 74.
  Although CBD brings separate constitutional claims against the Joint Resolution passed pursuant to the CRA and against the CRA itself, the validity of the former claim depends entirely on the latter. Therefore, the Court evaluates the constitutional claims only as against the CRA. *See infra* pp. 16–17.

[16] Although CBD identifies congressional actions as the animating force behind the alleged constitutional violations, it maintains that its challenges are directed toward DOI's actions—including treating the Refuges Rule as if it never took effect, removing it from the Federal Register, and declining to reissue a similar rule. Docket 119 at 46 n.14.

[17] Docket 19 (PLF's Mot. to Intervene); Docket 83 (Order Granting Mots. to Intervene).

[18] Docket 29 (Safari Club's Mot. to Intervene); Docket 83.

was permitted to intervene in order to assert its interests in and authority over the management of federal lands in Alaska.[19]

On October 6, 2017, Federal Defendants filed their Renewed Motion to Dismiss.[20] Federal Defendants' motion asserts that CBD has failed to establish subject matter jurisdiction or state a claim upon which relief can be granted.[21] More specifically, Federal Defendants assert that the Congressional Review Act and Public Law 115-20 are constitutional, CBD's constitutional challenge to the Reenactment Provision[22] is not ripe, and CBD's statutory claim is precluded by the CRA's judicial review provision.[23]

Defendant-Intervenors each filed separate motions to dismiss in which they incorporated the arguments of Federal Defendants' motion to dismiss and added additional grounds.[24] Safari Club's motion expresses support for Federal Defendants' motion, asserts that CBD lacks standing, and maintains that case law supports upholding the CRA.[25] PLF's motion incorporates Federal Defendants' motion and emphasizes the argument that the Court lacks subject matter jurisdiction over CBD's statutory claim because the CRA prohibits judicial review.[26] Alaska's motion incorporates Federal

---

[19] Docket 54 (Alaska's Mot. to Intervene); Docket 83.

[20] Docket 107.

[21] Docket 108 at 15.

[22] *See supra* note 11.

[23] Docket 108.

[24] *See supra* note 3.

[25] Docket 111.

[26] Docket 114.

Defendants' motion, with one exception, and discusses Alaska's land management authority.[27]

## LEGAL STANDARD

### I.     Dismissal Under Rule 12(b)(1)

A "lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."[28]  "A Rule 12(b)(1) jurisdictional attack may be facial or factual."[29]  In this case, Federal Defendants assert a facial challenge to one aspect of CBD's claim.[30]  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."[31]

The Court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."[32]     However, "[t]his is not to

---

[27] Defendant-Intervenor Alaska incorporates Federal Defendants' motion with the exception of Federal Defendants' assertion that the Refuges Rule was a valid exercise of DOI's authority, contained in pp. 5–6 of Federal Defendants' memorandum at Docket 108.  Docket 117 at 2. Because Alaska's motion primarily discusses issues beyond the scope of this case, including Alaska's right to manage the lands and resources in the state and the extent to which the Refuges Rule interfered with that right, these issues are not addressed in this order.

[28] *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (emphasis omitted).

[29] *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).

[30] Docket 108 at 15–16.  Federal Defendants assert that this Court does not have jurisdiction to consider CBD's statutory claim.

[31] *Safe Air for Everyone*, 373 F.3d at 1039.

[32] *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).

say that plaintiff may rely on a bare legal conclusion to assert injury-in-fact[.]"[33]  "[T]he party invoking federal jurisdiction bears the burden of establishing its existence."[34]

## II.    Dismissal Under Rule 12(b)(6)

When reviewing a Rule 12(b)(6) motion, a court considers only the pleadings and documents incorporated into the pleadings by reference, as well as matters on which a court may take judicial notice.[35]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[36]  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[37]  Thus, there must be "more than a sheer possibility that a defendant has acted unlawfully."[38]  A court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."[39]

## III.    Jurisdiction

CBD asserts that this Court has jurisdiction pursuant to 28 U.S.C. § 1331, because it raises a claim that arises under federal law, and pursuant to 28 U.S.C. § 1346, as a suit

---

[33] *Maya*, 658 F.3d at 1068.

[34] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998).

[35] *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

[36] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[37] *Id.* at 678.

[38] *Id.*

[39] *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

against the United States.  CBD also maintains that this Court has jurisdiction to review agency action pursuant the Constitution and the Administrative Procedure Act, 5 U.S.C. §§ 701–70.[40]

## DISCUSSION

### A.  The Congressional Review Act

1.  Overview

The CRA is a 1996 law which allows for congressional review of executive agency action.  The CRA provides that "[b]efore a rule can take effect, the Federal agency promulgating such rule shall submit to each House of the Congress and to the Comptroller General a report" that includes "a copy of the rule," "a concise general statement relating to the rule," and "the proposed effective date of the rule."[41]  Congress then has a set period of time during which it can enact a joint resolution disapproving the rule.[42]  5 U.S.C. §801(d)(1) provides:

> [I]n the case of any rule for which a report was submitted in accordance with subsection (a)(1)(A) during the period beginning on the date occurring—
>
> (A) in the case of the Senate, 60 session days, or
>
> (B) in the case of the House of Representatives, 60 legislative days,
>
> before the date the Congress adjourns a session of Congress through the date on which the same or succeeding Congress first convenes its next session, section 802 shall apply to such rule in the succeeding session of Congress.[43]

---

[40] Docket 104 at 3, ¶ 8–9.

[41] 5 U.S.C. § 801(a)(1)(A).

[42] *See* 5 U.S.C. § 802 (describing the procedures for passing a joint resolution).

[43] Section 801(d)(2)(A) allows for the § 802 review of rules issued during the latter stages of an outgoing Congress.  It was utilized in this instance to pass Public Law 115-20.  Section

If a joint resolution is passed by both houses of Congress within the applicable time period and according to the proper procedures, the joint resolution becomes law once signed by the President.[44] Once that occurs, the CRA dictates that the agency rule "shall not take effect" (the "Disapproval Provision").[45]

Furthermore, the CRA provides that the invalidated rule "may not be reissued in substantially the same form" and "a new rule that is substantially the same as such a rule may not be issued" (the "Reenactment Provision").[46] However, reenactment of the same or similar rule is permitted if "the reissued or new rule is specifically authorized by a law enacted after the date of the joint resolution disapproving the original rule."[47]

---

801(d)(2)(A) provides:

> In applying section 802 for purposes of such additional review, a rule described under paragraph (1) shall be treated as though–
> **(i)** such rule were published in the Federal Register (as a rule that shall take effect) on–
> **(I)** in the case of the Senate, the 15th session day, or
> **(II)** in the case of the House of Representatives, the 15th legislative day, after the succeeding session of Congress first convenes; and
> **(ii)** a report on such rule were submitted to Congress under subsection (a)(1) on such date.

Other provisions of the CRA, not relevant here, provide for a different timeline. 5 U.S.C. § 801(a)(3)–(4).

[44] As pointed out by the States in their *amicus curiae* brief, "[a] joint resolution, once signed by the President, is every bit as much of a law as a bill similarly signed." Docket 84 at 10 (quoting *United States v, Powell*, 761 F.2d 1227, 1235 (8th Cir. 1985)); *compare* U.S. Const. art. I, § 7, cl. 2 *with* U.S. Const. art. I, § 7, cl. 3 (describing that both bills and resolutions require passage by both houses of Congress and approval of the President).

[45] 5 U.S.C. § 801(b)(1).

[46] 5 U.S.C. § 801(b)(2).

[47] 5 U.S.C. § 801(b)(2).

2. CBD's Challenge

CBD appears to separately challenge the Disapproval Provision and the Reenactment Provision of the CRA. As to the former, CBD contends that the Disapproval Provision unconstitutionally allows Congress to alter DOI's authority without using bicameralism and presentment to amend the underlying statutes that give DOI its authority over National Wildlife Refuges in Alaska.[48] CBD also asserts that "even if the CRA and/or the Joint Resolution's declarations that a disapproved rule shall have no effect could be found constitutional, the CRA's prohibition on the issuance of a future rule in 'substantially the same form'" (the Reenactment Provision) violates the separation of powers doctrine by "creat[ing] a large and unconstitutional shadow effect that undermines Interior's rulemaking authority."[49]

## B. Standing

Article III standing requires that a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[50] To establish injury in fact, plaintiffs must establish that they suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."[51]

Here, CBD challenges two separate parts of the CRA. CBD must have standing

---

[48] Docket 104 at 12, ¶¶ 50–54.

[49] Docket 104 at 15, ¶ 72.

[50] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted).

[51] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quotations and citations omitted).

for each claim.[52]

1. Disapproval Provision

CBD's Amended Complaint alleges that Public Law 115-20's disapproval of the Refuges Rule will cause its members the following harm:

> Members of the Center seek out opportunities to study, observe and photograph wildlife (as well as their tracks and other signs) in national wildlife refuges in Alaska, including wolves, grizzly bears and black bears. Because of the Joint Resolution and the CRA, aggressive predator control practices authorized by Alaska's Board of Game are no longer categorically prohibited and thus might now occur on Alaska refuges. Such practices would lead to fewer predators and reduced opportunities to encounter and otherwise enjoy such wildlife on Alaska refuges. This, in turn, threatens to injure the Center and its members' aesthetic, conservation, recreational, scientific, educational and wildlife preservation interests in observing and appreciating these animals in the refuges.[53]

At the motion to dismiss stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim."[54] CBD has adequately alleged injury to its members resulting from the disapproval of the Refuges Rule.[55] The other parties do not appear to directly contest CBD's standing to challenge the Disapproval Provision.[56]

---

[52] *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (holding plaintiff must have standing for each claim that it brings) (citation omitted).

[53] Docket 104 at 4–5, ¶ 16.

[54] *Lujan*, 504 U.S. at 561 (internal quotations omitted) (citing *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 889 (1990)).

[55] *Id.* at 562–63 ("[T]he desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing."); *see also Ctr. For Biological Diversity v. Kempthorne*, 588 F.3d 701, 708 (9th Cir. 2009) (recognizing standing where plaintiffs' interest in observing a species or its habitat would be harmed by agency action).

[56] Docket 111 at 8 (Safari Club states that "the nullified Refuges rule theoretically harms CBD's

2. Reenactment Provision

Federal Defendants and Defendant-Intervenors Safari Club contest CBD's standing to challenge the Reenactment Provision of the CRA.[57] While Federal Defendants emphasize the lack of "ripeness," both Federal Defendants and Safari Club maintain that CBD has not identified a redressable injury stemming from the Reenactment Provision, in large part because of the speculative, non-imminent nature of any potential harm.[58]

Federal Defendants contend Plaintiffs lack standing because "Plaintiff has not alleged that the Department of the Interior has any intent to reissue the Refuges Rule (or any substantially similar rule) in the future and that 5 U.S.C. § 801(b)(2) is what stands in its way—Plaintiff only speculates that the Department of the Interior might be prevented

---

alleged interest in enjoying the wildlife affected by the State-authorized hunting and management methods.").

[57] *See* Docket 108 at 22 n.3; Docket 111 at 6–10.

[58] Federal Defendants recognize that "as a practical matter, '[t]he constitutional component of the ripeness inquiry is often treated under the rubric of standing.'" Docket 108 at 25 n. 7 (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) ("[I]n many cases, ripeness coincides squarely with standing's injury in fact prong.")). Except for the prudential component of ripeness, the question of a claim's ripeness is otherwise whether the plaintiff has standing to bring suit. *Nat'l Treasury Employees Union v. United States,* 101 F.3d 1423, 1427–28 (D.C. Cir. 1996) ("Ripeness, while often spoken of as a justiciability doctrine distinct from standing, in fact shares the constitutional requirement of standing that an injury in fact be certainly impending. It is only the prudential aspect of ripeness . . . that extends beyond standing's constitutional core." (citing *Duke Power Co. v. Carolina Envtl. Study Grp. Inc.*, 438 U.S. 59, 81–82 (U.S. 1978)) (internal citations omitted)). Moreover, "[p]rudential considerations of ripeness are discretionary." *Thomas*, 220 F.3d at 1142 (9th Cir. 2000); *see also Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) ("[The request to decline to adjudicate the case on prudential grounds] is in some tension with our recent reaffirmation of the principle that 'a federal court's obligation to hear and decide' cases within its jurisdiction 'is virtually unflagging.'") (quotation omitted) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013)). Therefore, the Court declines to dismiss CBD's claims on the basis of lack of ripeness, but instead evaluates CBD's standing to bring its claim regarding the Reenactment Provision.

from doing so at some future date."[59]   Similarly, Safari Club asserts that "[f]or the reenactment prohibition to cause harm to CBD's alleged interests, it would have to be likely that Interior would, but for the prohibition, attempt to enact such a regulation."[60] Safari Club maintains that because DOI "likely would not reenact a regulation that the President rejected by signing the Joint Resolution," the Reenactment Provision does not give rise to a redressable injury.[61]

In order to establish Article III standing, a plaintiff must show that it has "suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."[62] Here, CBD's challenge to the Reenactment Provision rests on its assertion that

> [b]ecause Congress has not amended any of Interior's authorities and obligations with regard to managing the National Wildlife Refuge System, by barring any future rule in "substantially the same form" as a disapproved rule, the CRA, alone or in conjunction with the Joint Resolution, unconstitutionally impinges upon the authorities and obligations of an Executive Branch agency to "take Care" that the laws be "faithfully executed."[63]

This assertion does not adequately allege an actual or imminent injury to CBD—it alleges only a hypothetical impingement.  However, "the Art. III requirements of standing are not satisfied  by  the  abstract  injury  in  nonobservance  of  the  Constitution  asserted  by

---

[59] Docket 108 at 25.

[60] Docket 111 at 8.

[61] Docket 111 at 9.

[62] *Lujan*, 504 U.S. at 560 (internal quotations and citations omitted).

[63] Docket 104 at 14–15, ¶ 71.

citizens."[64]  It is the Disapproval Provision—pursuant to which Congress passed Public Law 115-20—and not the Reenactment Provision—that is the reason why the Refuges Rule is not in effect.  Therefore, the Disapproval Provision—and not the Reenactment Provision—is the source of CBD's alleged injury.  Any injury caused by DOI's inability to promulgate a substantially similar rule, in the absence of any assertion that DOI would otherwise do so, is too speculative to constitute a concrete or imminent injury and is insufficient to confer Article III standing.

CBD also contends that "the prohibition on a future rule in 'substantially the same form' makes it difficult, if not impossible, for Interior to carry out its statutory obligations, as Interior cannot reasonably discern what Congressional mandates still apply, or how, going forward, it can manage the National Wildlife Refuge System in Alaska consistent with those mandates."[65]  CBD provides little support for the assertion that Federal Defendants' actions will preclude DOI from carrying out its statutory duties, except to suggest that Congress's disapproval of the Refuges Rule somehow renders DOI uncertain as to its remaining authority.  These unspecified and speculative allegations do not constitute a concrete or imminent injury.

Even if CBD could establish an injury-in-fact with respect to the Reenactment Provision, CBD has not alleged how invalidating that provision would redress such injury.

---

[64] *See Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 482 (1982) (quotations and alterations omitted).

[65] Docket 104 at 15.  CBD adds in its reply that "[b]ecause Interior cannot know the bounds of its lawful authority, Interior will not issue any new similar rule to protect wildlife in the national wildlife refuges consistent with its overarching statutory mandates, unless and until the Court resolves the Center's claim."  Docket 119 at 52.

For if the Disapproval Provision is valid, the Refuges Rule would remain without force and effect, having been disapproved through Public Law 115-20 pursuant that valid statutory provision. Without a stated intention by DOI to reinstate the same or substantially similar rule, the invalidation of the Reenactment Provision would not redress CBD's alleged injury.[66] CBD maintains that because it seeks reinstatement of the Refuges Rule, its alleged injury resulting from the Reenactment Provision is redressable.[67] But although reinstatement might occur if the Disapproval Provision were invalidated, reinstatement is not plausible if only the Reenactment Provision were invalidated. Therefore, CBD has not established a redressable injury and lacks Article III standing to challenge to the Reenactment Provision.

### C. Joint Resolution and the CRA

The Court turns to the constitutionality of the Disapproval Provision of the CRA and the Joint Resolution enacted pursuant to it. In its Amended Complaint, CBD makes separate challenges to the Joint Resolution and the CRA. However, the bases for the claims are substantively identical.[68] CBD challenges both the Joint Resolution and the CRA on the basis that they violate the separation of powers doctrine because, through them, Congress restricted DOI's authority without amending the underlying statutes that grant DOI its authority to manage National Wildlife Refuges in Alaska.[69] CBD alleges that

---

[66] *See* Docket 111 at 10.

[67] Docket 119 at 49–50.

[68] In some instances, CBD's second claim repeats sections of its first claim verbatim, merely replacing references to the Joint Resolution with references to the CRA. *Compare* Docket 1 at 13, ¶ 55 *with* Docket 1 at 15, ¶ 73; *compare* Docket 1 at 13, ¶ 57 *with* Docket 1 at 15, ¶ 74.

[69] Docket 104 at 13, ¶ 53; Docket 104 at 14, ¶ 69.

to the extent the Joint Resolution and the CRA were the bases for congressional disapproval of the Refuges Rule, both were "contrary to law in violation of . . . Interior's obligation to 'take Care' that the laws it is charged with administering be 'faithfully executed.'"[70] Thus, while CBD purports to make independent claims against both the Joint Resolution and the CRA, both claims rest entirely on the purported unconstitutionality of the CRA. If the Disapproval Provision of the CRA is constitutional, then the Joint Resolution was a valid exercise of congressional authority under the CRA; if the Disapproval Provision of the CRA represents an unconstitutional exercise of power, then the Joint Resolution was passed pursuant to an unconstitutional statute and is thus invalid. Because the constitutionality of the Joint Resolution is determined by the constitutionality of the CRA, the claims will be considered together in this order. Accordingly, the Court will evaluate CBD's first two claims in its Amended Complaint as a single challenge to the constitutionality of the Disapproval Provision of the CRA ("Constitutional Claim").[71]

### D. Constitutional Claims to the Disapproval of the Refuges Rule

Pursuant to the requirements of the CRA, Public Law 115-20 was passed by both houses of Congress and signed by the President. However, CBD asserts that Public Law 115-20 violates the Constitution in two respects: it lacks bicameralism and presentment, and it violates the "Take Care" Clause.

---

[70] Docket 104 at 13, ¶ 57; Docket 104 at 15, ¶ 74.

[71] CBD's third claim, which challenges the Joint Resolution as an *ultra vires* action beyond the permissible scope of the CRA, will be referred to as the "Statutory Claim." The Court will also address CBD's claims regarding the APA as part of the section discussing the Statutory Claims.

1. Bicameralism and Presentment

Article I, Section 7 of the Constitution states that "[e]very Bill which shall have passed the House of Representatives and the Senate, shall, before it become a Law, be presented to the President of the United States; If he approve he shall sign it."[72] Therefore, a bill must have been passed by both houses of Congress and signed by the President in order to become law. The former requirement is known as bicameralism and the latter is known as presentment.

Here, there is no contention that the CRA and Public Law 115-20 were not both passed in accordance with the constitutional mandates of bicameralism or presentment. However, CBD asserts that "[t]o lawfully constrain or otherwise alter Interior's authority under these statutes, Congress must amend these laws using the constitutionally-mandated process of bicameralism and presentment."[73] Because Public Law 115-20 limits DOI's rulemaking authority but Congress did not specifically amend the underlying sources of that authority, CBD maintains that a constitutional violation has occurred. Federal Defendants respond that joint resolutions passed pursuant to the CRA are consistent with the constitutional requirements of bicameralism and presentment.[74]

CBD cites to *INS v. Chadha* as support for its assertion that for Congress to alter DOI's authority pursuant to the CRA, it must first have "amended through bicameralism and presentment ANILCA, the Administration Act, the Improvement Act, or any other law

---

[72] U.S. Const., art. I, § 7, cl. 2.

[73] Docket 104 at 12, ¶ 52.

[74] Docket 108 at 17.

which provided Interior the rulemaking authorities and mandates executed via the Refuges Rule."[75]  CBD does not explain how *Chadha* supports its position.  In *Chadha*, the Supreme Court struck down the House of Representatives' practice of using a "legislative veto," in which the House of Representatives would unilaterally override a decision of the executive branch to suspend an individual's deportation.[76]  To carry out its legislative veto, the House passed a resolution that purported to deport an individual and "was not submitted to the Senate or presented to the President for his action."[77]  The Supreme Court held that "[t]o accomplish what has been attempted by one House of Congress in this case requires action in conformity with the express procedures of the Constitution's prescription for legislative action: passage by a majority of both Houses and presentment to the President."[78]

Here, Public Law 115-20 was passed by both the House and Senate and submitted to the President for approval, as required by the CRA—which was also passed by both houses of Congress and signed into law by the President.[79]  Thus, the requirements of bicameralism and presentment are met and CBD's separation of powers concerns fail to state a plausible claim for relief.

---

[75] Docket 104 at 14, ¶ 69.

[76] 462 U.S. 919, 924–925 (1983).  "Pursuant to the § 244(c)(1) of the [Immigration and Nationality] Act, 8 U.S.C. § 1254(c)(1), the immigration judge suspended [Chadha's] deportation and a report of the suspension was transmitted to Congress. . . . Once the Attorney General's recommendation for suspension of Chadha's deportation was conveyed to Congress, Congress had the power . . . to veto the Attorney General's determination that Chadha should not be deported."  *Id.*

[77] *Id.* at 927–28 (1983).  Deportation proceedings were then reopened, and "Chadha was ordered deported pursuant to the House action."  *Id.* at 928.

[78] *Id.* at 958.

[79] *See* Docket 104 at 11, ¶ 41; *see also* 5 U.S.C. § 801 *et seq.*

2.  "Take Care" Clause

Article II, Section 3 of the Constitution provides that "[the President] shall take Care that the Laws be faithfully executed" (the "Take Care Clause").  The Supreme Court has held that "[t]he duty of the President to see that the laws be executed is a duty that does not go beyond the laws or require him to achieve more than Congress sees fit to leave within his power."[80]

Here, CBD contends that

> [b]ecause Congress has not amended any of Interior's authorities and obligations with regard to managing the National Wildlife Refuge System, the CRA, alone or in conjunction with the Joint Resolution, in declaring that the Refuges Rule "shall not take effect (or continue)," unconstitutionally impinges upon the authorities and obligations of an Executive Branch agency to "take Care" that the laws be "faithfully executed."[81]

CBD reiterates its assertion that Congress must amend DOI's underlying statutory authority before it can disapprove a regulation such as the Refuges Rule, but does not provide persuasive authority to support that assertion.  Federal Defendants respond that "Plaintiff's citations to the Take Care Clause should not be construed as adding anything meaningful to its existing constitutional challenges because the Clause does not provide an independent cause of action in this case."[82]

The authority of an executive agency comes from Congress and is subject to modification by Congress.[83]  CBD appears to assert that whenever Congress delegates

---

[80] *Bowsher v. Synar*, 478 U.S. 714, 762 (1986) (quoting *Myers v. United States*, 272 U.S. 52, 85 (1926) (Holmes, J., dissenting)).

[81] Docket 104 at 14, ¶ 70.

[82] Docket 108 at 23.

[83] *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125 (U.S. 2000) (An executive agency "may not exercise its authority 'in a manner that is inconsistent with the

authority to an executive agency, it cannot alter or restrict that authority unless it first specifically amends the statutes originally granting that authority. CBD does not provide authority for this assertion, nor does the Court find a basis for it.[84]

By framing its argument as relying on the Take Care Clause, CBD appears to

---

administrative structure that Congress enacted into law.'").

[84] CBD repeatedly asserts the necessity of Congress' *amending* the underlying statutes— referencing ANILCA, the Administrative Act, and the Improvement Act—in order to lawfully restrict an agency's rulemaking authority in the manner allowed by the CRA. Docket 104 at 12, ¶¶ 52– 54; Docket 119 at 26–28. However, CBD provides no authority in its Amended Complaint or in its briefing to support this assertion except for citations to art. 1, § 7 of the Constitution and *INS v. Chadha*, neither of which articulates a requirement that Congress cannot restrict an agency's rulemaking authority unless it also amends the underlying statute through which Congress granted that agency its authority in the first place. Federal Defendants respond that "there is simply no such requirement—constitutional or otherwise—that Congress take some clerical action to formally amend or repeal an older law (or regulation) before enacting a new inconsistent law"; Federal Defendants maintain that "even if there were such a requirement, Congress *did* amend the older statutes that led to the issuance of the Refuges Rule by declaring that, notwithstanding those prior statutes, the Refuges Rule shall have no force and effect." Docket 108 at 19–20. In CBD's reply, it characterizes Federal Defendants' response as an assertion that Public Law 115-20 constituted an "implied repeal" of DOI's statutory authority and reiterates its contention that bicameralism and presentment are required for Congress to withdraw delegated authority from an agency. Docket 119 at 22, 27–28. However, CBD acknowledges that there is no direct conflict between Public Law 115-20 and the statutes through which DOI derives its authority to regulate National Wildlife Refuges in Alaska, thus making it even less clear why repeal or amendment of those statutes is necessary. *See* Docket 119 at 22 (stating "there is no conflict at all" between the Joint Resolution and either ANILCA, the Administration Act, or the Improvement Act). To the extent that there is inconsistency, Federal Defendants maintain that "Courts routinely apply newer statutory language at the expense of the old without suggesting that this inconsistency is, in itself, of any constitutional moment." Docket 108 at 20 (citing *Hellon & Assocs., Inc. v. Phoenix Resort Corp.*, 958 F.2d 295, 297 (9th Cir. 1992) ("[T]o the extent that statutes can be harmonized, they should be, but in case of an irreconcilable inconsistency between them the later and more specific statute usually controls the earlier and more general one.")). Furthermore, in light of the examples identified by PLF in which Congress directed agency action without amending the underlying statutes, CBD's assertions appear misplaced. *See Friends of Animals v. Jewell*, 824 F.3d 1033, 1045 (D.C. Cir. 2016) (upholding legislation that required FWS to reissue regulation previously struck down under the Endangered Species Act despite not amending the ESA itself); *Alliance for the Wild Rockies v. Salazar*, 672 F.3d 1170, 1174 (9th Cir. 2012) (holding that where "Congress has directed the agency to issue [a] rule without regard to any other provision of statute or regulation . . . Congress has amended the law" (quotations omitted)). Ultimately, CBD does not provide persuasive authority to support its claim that Public Law 115-20 is invalid because Congress failed to amend the underlying statutory provisions.

argue that if DOI abides by Public Law 115-20's express disapproval of the Refuges Rule, then DOI will violate the duty placed upon it by the Constitution to faithfully execute the laws of the United States, as enacted by Congress.[85]  This argument seems to require selectively defining "the laws of the United States" as referred to in the Take Care Clause to encompass the statutes granting DOI its authority over National Wildlife Refuges in Alaska but not Public Law 115-20, validly enacted pursuant to the CRA.  Furthermore, given that the CRA is itself a law passed by Congress pursuant to the mechanisms outlined in the Constitution, CBD does not adequately explain how the Take Care Clause mandates that the executive branch should retain authority that Congress, with Presidential approval, withdrew from it through Public Law 115-20.  Consequently, CBD's invocations of the Take Care Clause do not adequately state a claim for relief as to either the Joint Resolution or the Disapproval Provision of the CRA.

In light of the foregoing, the Court finds that even construing all the facts in favor of CBD, CBD's constitutional claims fail to adequately allege a plausible basis for relief.

### E.  Statutory Claims

#### 1.  Administrative Procedure Act

CBD contends in the Amended Complaint that "[t]o the extent Interior has relied upon the Joint Resolution to revoke, refuse to implement, or otherwise nullify the Refuges

---

[85] Federal Defendants assert that the Take Care Clause, based on its plain language, only applies to the President and not the executive agencies.  Docket 108 at 15–17.  CBD counters that "the Supreme Court has repeatedly held that the Clause applies to executive officers and other subordinates of the President."  Docket 119 at 31 n.7 (citing *Printz v. United States*, 521 U.S. 898, 922 (1997)).  Even if taking the latter view, CBD has failed to state a claim against DOI on the basis of the Take Care Clause.

Rule, that decision is contrary to law in violation of the APA," citing 5 U.S.C. § 706(2).[86]

That provision of the APA requires that a court "hold unlawful and set aside agency actions, findings, and conclusions" if they are problematic for a specific set of reasons, including being "contrary to a constitutional right, power, privilege, or immunity."[87] Because CBD does not identify a particular basis for finding the CRA invalid under the APA, nor provide any specific support for its contention that an APA violation has occurred, the Court presumes that CBD's APA claim is relies on the alleged unconstitutionality of the CRA and Public Law 115-20. Therefore, unless CBD establishes a constitutional violation, it cannot state an independent claim under the APA. In light of the previous analysis of CBD's constitutional claims, CBD fails to state a plausible claim for relief under the APA.

### 2. *Ultra Vires* Revocation

In its second statutory argument, CBD contends that because the Refuges Rule fell under § 808 of the CRA, which exempts rules relating to hunting and fishing from certain provisions of that act, it was thus immune from congressional review and should have remained in effect.[88] Although Federal Defendants and Defendant-Intervenors PLF challenge the Court's subject matter jurisdiction over this claim, the Court finds that it has jurisdiction and that CBD has failed to state a claim on the merits.[89]

---

[86] Docket 104 at 13, ¶ 57.

[87] 5 U.S.C. § 706(2)(B).

[88] CBD maintains that it is not challenging congressional action, although the challenged action—DOI's "treat[ment] [of] the Refuges Rule as though such rule had never taken effect" and "decision to discard the Refuges Rule"—were both directly prompted by Congress. Docket 119 at 46 n.14; *cf.* Docket 108 at 40.

[89] Federal Defendants and Defendant-Intervenor PLF contend that this Court lacks subject matter

5 U.S.C. § 808 provides that "any rule that establishes, modifies, opens, closes, or

---

jurisdiction over the claim for two reasons.  First, PLF characterizes CBD's statutory claim as an assertion "that Congress misapplied its internal rules in disapproving the Refuges Rule under the Congressional Review Act," which is not cognizable in this Court because "the Rules Clause of the Constitution forbids courts from second-guessing Congress' application of its internal rules unless those rules violate some independent constitutional constraint."  Docket 114 at 11–12 (citing *Mester Mfg. Co. v. I.N.S.*, 879 F.2d 561, 571 (9th Cir. 1989)).  However, CBD's challenge is to agency action taken pursuant to an official act of Congress, and not the application of an internal rule of Congress.

Second, PLF and Federal Defendants assert that the CRA itself bars this Court from reviewing CBD's claim.  Docket 114 at 12.  5 U.S.C. § 805 provides that "[n]o determination, finding, action, or omission under this chapter shall be subject to judicial review."  However, CBD is not seeking review of action taken under the CRA.  Instead, CBD is claiming that DOI, at the behest of Congress, acted *ultra vires* in taking action beyond the authority provided by the CRA.  Therefore, § 805's restriction on judicial review does not apply.  The cases discussed by Federal Defendants do not persuade the Court otherwise.  *See* Docket 108 at 29.  *Montanans For Multiple Use v. Barbouletos* addressed the Forest Service's alleged failure to submit certain rules for congressional review pursuant to 5 U.S.C. § 801(a)(1)(A).  568 F.3d 225, 229 (D.C. Cir. 2009).  The court held that "[t]he language of § 805 is unequivocal and precludes review of this claim."  *Id.*  However, the same does not appear to be true here, because unlike in *Barbouletos*—in which the plaintiffs disputed the agency's compliance with the procedures of the CRA—CBD challenges the fundamental authority of the agency to take the action at issue.  With regard to *Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*, Federal Defendants offer only a footnote from a case from the Tenth Circuit, whose authority does not bind this court.  509 F.3d 1259, 1271 n.11 (10th Cir. 2007).  Furthermore, Federal Defendants acknowledge that other courts have recognized challenges to agency non-compliance with the CRA.  Docket 108 at 29 (citing *United States v. S. Indiana Gas & Elec. Co.*, 2002 WL 31427523 (S.D. Ind. Oct. 24, 2002)).

Federal Defendants further assert that CBD would only be able to establish this Court's subject matter jurisdiction through the *Leedom v. Kyne* exception, which permits judicial review of a claim that an agency acted *ultra vires* only if the agency acts "in excess of its delegated powers and contrary to a specific prohibition" in its organic statute and "deprived the professional employees of a 'right' assured to them by Congress."  *Leedom v. Kyne*, 358 U.S. 184, 188–89 (1958); *see* Docket 108 at 30.  However, notwithstanding Federal Defendants' speculation, CBD did not make any assertions with regard to this exception.  Therefore, the Court need not analyze and decide whether CBD has challenged an agency decision that qualifies for the exception.  As described above, CBD has standing to challenge the disapproval of the Refuges Rule, and CBD's statutory claim alleges that this disapproval was executed in violation of the CRA.  As a claim that arises under a federal law, and in light of the Court's rejection of PLF's and Federal Defendants' arguments to the contrary, this Court has jurisdiction to consider the claim.  Regardless, the Court determines that CBD's interpretation of § 808 is incorrect and therefore does not state a plausible claim for relief.

Finally, to the extent that CBD challenges the CRA's procedures, the *amici* States assert that such "challenge to the CRA's procedures would be a non-justiciable political question."  Docket 84 at 12 (citing *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1171–72 (9th Cir. 2007)).  However, CBD's claims do not appear or purport to be challenging Congress's compliance with its own rules.

conducts a regulatory program for a commercial, recreational, or subsistence activity related to hunting, fishing, or camping . . . shall take effect at such time as the Federal agency promulgating the rule determines." CBD asserts that this provision of the statute indicates that "the CRA does not permit Congressional disapproval of regulations covered by Section 808 in a new session of Congress," and therefore the Refuges Rule could not have been properly disapproved under the CRA because "it is plainly a 'rule that establishes, modifies, opens, closes, or conducts a regulatory program for a commercial, recreational, or subsistence activity related to hunting, fishing, or camping'" and therefore falls under § 808.[90]

Rules not falling within § 808 take effect pursuant to the timeline laid out in §§ 801(a)(3)–(4).[91] § 801(d)(1) provides for the mechanism used by Congress in passing the Joint Resolution in this case, allowing a new session of Congress to disapprove a rule

---

[90] Docket 104 at 18, ¶¶ 86, 87 (quoting 5 U.S.C. § 808).

[91] 5 U.S.C. 801 provides as follows:

> (a)(1)(A) Before a rule can take effect, the Federal agency promulgating such rule shall submit to each House of the Congress and to the Comptroller General a report containing--
>> (i) a copy of the rule;
>> (ii) a concise general statement relating to the rule, including whether it is a major rule; and
>> (iii) the proposed effective date of the rule.
> . . .
> (3) A major rule relating to a report submitted under paragraph (1) shall take effect on the latest of--
>> (A) the later of the date occurring 60 days after the date on which--
>>> (i) the Congress receives the report submitted under paragraph (1); or
>>> (ii) the rule is published in the Federal Register, if so published;
> . . .
> (4) Except for a major rule, a rule shall take effect as otherwise provided by law after submission to Congress under paragraph (1).

passed at the end of the prior session of Congress. CBD contends that because §
801(d)(1) contemplates "any rule for which a report was submitted in accordance with
subsection (a)(1)(A)," then 801(d)(1) does not apply to the Refuges Rule, because
"regulations covered by Section 808 do not require a Congressional Report because
Section 801 only requires such a report '[b]efore a rule can take effect,' and by operation
of Section 808, these regulations take effect irrespective of a Congressional Report."[92]
Therefore, argues CBD, the Refuges Rule was not "submitted in accordance with
subsection (a)(1)(A)," and therefore "the Refuges Rule was not eligible for disapproval
under Section 801(d)(1) in the new session of Congress."[93]

However, CBD's argument appears to impute more meaning to § 808 than its plain
language will allow. There is nothing in the language of § 808 to indicate that it is intended
to exempt rules related to fishing or hunting from Congressional review altogether. By its
own words the provision allows the agency to determine the date that the regulation "shall
take effect," thus withdrawing it from the timeline established by §§ 801(a)(3)–(4). Rather
than having the kind of sweeping effect proposed by CBD, the language of the CRA
indicates that § 808 merely alters the effective date of those particular types of agency
rules.

Furthermore, as Federal Defendants argue, "[§ 801(a)(1)(A)] says that an agency
'shall submit' a CRA report when it issues 'a rule,' and specifies that the report include

---

[92] Docket 104 at 17, ¶¶ 83, 85.

[93] Docket 104 at 18, ¶ 88.

certain information about 'the rule.'"[94] The Refuges Rule, despite falling within § 808, is undoubtedly "a rule;" therefore, this Court sees no reason why it would not fall under § 801(a)(1)(A). In addition, § 801(d)(1) provides for review of rules "for which a report was submitted in accordance with subsection (a)(1)(A) [during the specified time period]." Here, there is no dispute that a report was submitted for the Refuges Rule, within the time period specified in § 801(d)(1). Therefore, CBD's fails to state a cognizable claim for relief.[95]

## CONCLUSION

In light of the foregoing, the Motions to Dismiss at Dockets 107, 110, 113, and 116 are GRANTED.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 9th day of May, 2018 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[94] Docket 108 at 37.

[95] In the section of the Amended Complaint that asserts a statutory claim pursuant to the CRA, CBD also alleges a violation of the Constitution and the APA, 5 U.S.C. § 706. Docket 104 at 18, ¶ 90 ("To the extent Interior has relied upon the CRA, alone or in conjunction with the Joint Resolution, to revoke, refuse to implement, or otherwise nullify the Refuges Rule, that decision is *ultra vires* and beyond Interior's authority. Such a decision is in violation of the APA and Interior's Constitutional obligation to 'take Care' that the laws it is charged with administering are 'faithfully executed.' 5 U.S.C. § 706(2); U.S. Const., art. II, § 3."). CBD's unsupported citations to the Constitution and APA appear to be an attempt to assert claims that depends entirely on a finding that Federal Defendants' conduct was indeed *ultra vires*, as alleged in the statutory claim. Therefore, in light of CBD's failure to state a statutory claim, these assertions regarding the Constitution and the APA similarly fail to state a claim.